UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| JOAN ADELL TRINGALE, | Case No. 2:23-cv- 12309 |
| Plaintiff, | District Judge |
| -vs- | Magistrate |
| KEVIN ADELL, | |
| Defendant. | |

_____

## **COMPLAINT**

Plaintiff Joan Adell Tringale, by and through her undersigned counsel, Garratt & Bachand, P.C., states as and for her Complaint against Defendant Kevin Adell as follows:

### **Introduction**

Defendant perpetrated an enormous, outrageous fraud upon Plaintiff that was part of Defendant's long-term, widespread pattern of criminal and other wrongful behavior that did significantly harm and likely will significantly harm multiple other victims.

In pertinent part, Defendant was but one of eight (8) trust beneficiaries who shared the same trust assets, but Defendant cheated each of the others out of their beneficial interests worth literally millions of dollars.

1

The largest single trust asset that Defendant stole is the so-called Novi Property." The "Novi Property" is nearly 25 acres that abut the Novi Road exit ramp from eastbound I-96 in Novi, Oakland County, Michigan. For many years the site of "Novi Expo Center" and now "Adell Center," the Novi Property is southwest of Twelve Oaks Mall and has its distinctive landmark, a huge, spherical water tower now emblazoned "ADELL."

In a nutshell, despite Defendant himself having signed an mortgage discharge (Exhibit 1), and delivered that discharge it to another trust beneficiary that Defendant claims was the "point person" for other trust beneficiaries, Defendant caused a foreclosure sale of the Novi Property based on a phony mortgage (Exhibit 2) to secure payment of a phony debt (Exhibit 3) to a phony mortgagee and without any notice whatsoever to any other trust beneficiary. Defendant then fraudulently concealed his wrongdoing for many years, e.g. informing trust beneficiaries of the status of opportunities to market, develop or lease the Novi Property for their common good and otherwise deceiving them to continue to believe that their beneficial interests were well protected. As a result, Defendant, who had had only a one-ninth beneficial interest in the Novi Property and other assets, misappropriated everything.

To facilitate and accomplish his fraudulent scheme, Defendant was assisted by both his long-time employee and agent Ralph Lameti ("Lameti"), who at all

pertinent times was a Michigan lawyer and CPA and Plaintiff's trustee) and other lawyers, at least some of whom were or should have been cognizant of Defendant's fraudulent scheme when they were assisting him.

## The Parties, Jurisdiction, And Venue

1.     Plaintiff Joan Adell Tringale is a resident of and domiciled in Oakland County, Michigan.

2.     Defendant Kevin Adell is a resident of and domiciled in Florida.

3.     This Court has original jurisdiction of this civil action pursuant to 28 USC 1332(a); the matter in controversy exceeds the sum or value of $75,000 exclusive of interest and costs and is between citizens of different States.

4.     Venue of this civil action is proper in the Eastern District of Michigan pursuant to 28 USC 1391(b)(2); the events and omissions that give rise to Plaintiff's claim occurred, and the property that is the subject of this action is situated in, the Eastern District of Michigan.

## Facts[1]

5.     About half a century ago:

---

[1] As used herein: (b) the term "used the mail" means to have placed in a post office or authorized depository for mail something to be sent or delivered by the postal service, to have deposited or caused to be deposited something to be sent or delivered by private or commercial interstate carrier, to have taken or received something by such means, or to knowingly cause to be delivered by mail or such carrier according to the direction thereon or at the place at which it is directed to be delivered by the person to whom it is addressed, within the meaning of 18 USC 1341; and (b) the term "used the wires" means to have transmitted a writing by wire communication in interstate commerce, within the meaning of 18 USC 1343.

(a) each of the three (3) Adell brothers, Robert, Franklin, and Marvin Adell, created an irrevocable trust for the benefit of his own children; but for the settlor and beneficiaries, the three (3) trusts were and are substantially identical, <u>e.g.</u> each owned an interest in the same asset and each trust beneficiary was entitled at age 35 to a conveyance from the trustee of that beneficiary's fractional share of trust assets;

(b) the three (3) trusts acquired parcels of land that ultimately comprised the "Novi Property," <u>i.e.</u> nearly 25 acres which abut the Novi Road exit from eastbound I-96 in Novi, Oakland County, Michigan; and

(c) Adell Brothers Children's Trust ("ABCT") was organized to manage receipts from and disbursements for the 3 trusts' Novi Property, but ABCT never have actual or apparent authority to mortgage, sell or otherwise transfer or hypothecate the Novi Property.

6.      The eight (8) trust beneficiaries of the 3 trusts ("trust beneficiaries") and their respective, <u>pro rata</u> interests in the Novi Property and other assets owned equally by the 3 trusts are and at all pertinent times have been:

(a) Robert Adell Children's Funded Trust ("Robert's Trust") beneficiary:

    i.  Plaintiff Joan Tringale (1/3)

(b) Franklin Adell Children's Funded Trust beneficiaries:

    i.  Julie Adell Verona (1/9)

4

     ii.  Laurie Adell Fischgrund (1/9)

    iii.  Defendant Kevin Adell (1/9)

  (c) Marvin Adell Children's Funded Trust beneficiaries:

     i.  Michael Adell (1/12)

    ii.  Loren Adell (1/12)

    iii.  Rhonda Adell Satovsky (1/12)

    iv.  Linda Adell Fitzerman (1/12)

7.    The Novi Property was soon improved with a 300,000 sq/ft. building and a water tower (which Defendant has now emblazoned "ADELL") that the Adell brothers initially used for their businesses, after which the Novi Property was leased to Mohawk Liquor in the 1980s and then Novi Expo Center, Inc. ("NEC") from the 1990s until 2006.

8.    In 1989 Lameti, who then was and still is licensed as a Michigan lawyer and certified public accountant, became one of two (2) co-trustees of each of the three (3) trusts.

9.    In 1997, when all of the trust beneficiaries had become adults and some were entitled to a conveyance from the trustees of a fractional, undivided interest in the Novi Property, Lameti as trustee of the 3 trusts retained ownership and control of the Novi Property and assured the trust beneficiaries that all final decisions regarding the trust property (e.g., granting a first mortgage of the Novi Property to secure

payment of an alleged $1,000,000 debt payable on demand) ultimately rest with the beneficiaries alone.

10.     In or about 1999 Lameti became and since then has remained the sole trustee of the three (3) trusts; when his co-trustee resigned or died, Lameti never appointed a successor co-trustee; ultimately Lameti called himself the "trustee" of ABCT, even though it was not a trust, it had no trustee, and it had a limited purpose with no actual or apparent authority to transfer or hypothecate the Novi Property.

11.     In 2002, although each trust beneficiary had become 35 years old and was entitled to a conveyance from Lameti as trustee of a fractional, undivided interest in the Novi Property, Lameti undertook to continue his management of the Novi Property "consistent with past practice," which included without limitation Lameti's aforesaid assurance that all final decisions regarding the trust property rest with the trust beneficiaries alone.

12.     In or about 2006, at or about the time Defendant's father Franklin Adell died, most income of the 3 trusts ceased because the then Novi Property tenant, NEC, ceased paying rent, vacated the Novi Property, and assigned its leasehold interest to another tenant; because Defendant and Lameti disputed whether NEC had the legal right to do so, litigations and arbitrations ensued for years.

13.     Nevertheless, Plaintiff reasonably believed that her beneficial interest in the Novi Property and other trust assets was well protected; for example:

(a) Plaintiff's trustee Lameti, a lawyer and a CPA, was qualified to manage the Novi Property and was employed by Plaintiff's first cousin, Defendant, who was a local businessman that shared a common interest with Plaintiff, i.e. each had a significant beneficial interest in the Novi Property and other trust assets.

(b) Plaintiff received annual financial statements and K-1s through 2008 by mail from Defendant or Lameti stating that ABCT/3 trusts had no loan indebtedness whatsoever and total liabilities of only $12,300 (see, e.g. Exhibit 4); because the 3 trusts and ABCT had no rental income thereafter, Plaintiff was not surprised when she ceased receiving annual financial statements and K-1s.

(c) From 2009-2015, due to lack of rental income from the Novi Property, Defendant Adell and Lameti used the mail and the wires to obtain, and caused trust beneficiaries to use the mail to send Defendant and Lameti, enough money to pay whatever Novi Property taxes Defendant or Lameti said ABCT and 3 trusts were unable to pay; indeed, Defendant even agreed to pay, and did pay, that part of the one-third share of Novi Property taxes that ABCT, Robert's Trust, and Plaintiff did not pay.

(d) After 2015 trust beneficiaries did not send Defendant or Lameti money to pay Novi Property taxes because they were told by Defendant and Lameti that (i) the Novi Property taxes had been reduced as a result of the demolition of the

building on the Novi Property and (ii) the City of Novi's obligation to pay about $20,000/year to the three (3) trusts was sufficient to pay the reduced Novi Property taxes.

(e) Plaintiff periodically received information about continuing efforts to market, develop or lease the Novi Property, at times the result of communications transmitted by wire or by mail from Defendant or his agent Lameti to one or more other trust beneficiaries. For example:

   i.   Defendant and Lameti now assert that they considered trust beneficiary Michael Adell to be the "point person" for other trust beneficiaries;

   ii.   Defendant and Lameti periodically asked trust beneficiary Michael Adell, businessman, to pass on to other trust beneficiaries certain statements they made to him about the Novi Property; and

   iii.   trust beneficiary Michael Adell typically conveyed to other trust beneficiaries, directly or indirectly, the substance of such statements, some of which are detailed below.

14.   For the past decade or more, Defendant and his agents have used the mail and the wires to hinder, delay, and defraud one or more creditors, trust beneficiaries, and purchasers of parts of the Novi Property.

15.   Unbeknownst to Plaintiff, Defendant acquired control of Lameti and his conduct vis-à-vis the Novi Property, the 3 trusts, ABCT, and the other trust

beneficiaries, and Lameti became Defendant's agent in those respects; for example:

(a) Lameti's compensation from or through Defendant was apparently about $1,000,000/year and included the use of luxury automobiles, such as a Lamborghini.

(b) Even before the phony mortgage referenced below existed, Lameti acquiesced in Defendant replacing Lameti as the public spokesperson for the Novi Property, in Defendant holding himself out as though he alone owned the Novi Property, and in Defendant making major decisions about the Novi Property, e.g. what contractors performed work at the Novi Property.

(c) Lameti literally gave Defendant possession of the Novi Property and ABCT's ownership of the entity called Novi Trade Center, LLC and its assets, after which Defendant caused an entity he controlled, i.e. STN.com, Inc. ("STN"), to expend large amounts of money, allegedly $1,121,974 (see Exhibit 5), to promote Defendant's plan to own and operate a giant flea market that Defendant proposed to call Novi Trade Center on the Novi Property, despite the fact that such a use was barred by the City of Novi's zoning ordinance.

(d) Because the City of Novi ultimately refused to rezone the Novi Property and permit the operation there of Defendant's proposed giant flea market, Defendant abandoned that venture but had no legitimate means to recoup the large amounts that STN had prematurely expended to promote that venture;

consequently, Defendant and/or Lameti caused the internal accounting records of STN (of which Lameti was Chief Financial Officer) to be altered in order to make it appear that any debt owed by Defendant or his Novi Trade Center, LLC to STN was, instead, owed by ABCT and, by implication, the 3 trusts to STN. Compare Exhibit 6 at account # 145 with Exhibits 7 and 8 at account #145.

16.   In 2013:

(a) the Hyman Lippitt law firm was prosecuting an arbitration proceeding against ABCT and the 3 trusts to collect about $200,000 in legal fees that Hyman Lippitt had been owed since 2008 for its legal services in matters that had arisen from Defendant's aforesaid dispute with NEC, the former tenant of the Novi Property;

(b) Defendant was so adamant that Hyman Lippitt be paid little or nothing that Defendant asserted that he would "dance on Norm's [Norman Lippitt's] grave" before paying Hyman Lippitt, and "that every year is like a dog year" [to Norman Lippitt]," and Defendant caused Lameti not to pay Hyman Lippitt what it was owed and not to settle with Hyman Lippitt, even though ABCT/3 trusts had essentially no other liability, the 3 trusts' Novi Property was worth many millions of dollars, and the 3 trusts had the sufficient collateral to borrow enough money to pay any bona fide debt and then repay such a loan

over time.

(c) In order to hinder, delay and defraud at least that creditor, Defendant had attorney(s) prepare, and had Lameti sign on behalf of ABCT (a phony mortgagor, as it did not own the Novi Property), both a phony first mortgage on the Novi Property and a phony promissory note to pay the aforesaid phony $1,121,974 debt on demand to "Kevin Adell/STN.com, Inc.," a phony mortgagee (as no such entity existed). See Exhibits 2 and 3.

(d) After the phony mortgage was recorded, Defendant and Lameti at or about the same time used the wires to inform trust beneficiary Michael Adell that, while there was a mortgage on the Novi Property, (a) the mortgage was for the purpose of helping to negotiate a settlement of Hyman Lippitt's claim, (b) the mortgage would not be used against or impact any of the trust beneficiaries (including Plaintiff), (c) the mortgage could not and would not ever be foreclosed and (d) Michael Adell would be promptly sent (as he was) a discharge of that mortgage signed by Defendant, e.g. to demonstrate that the mortgage was a sham and would not be used to harm the trust beneficiaries.

(e) Minutes before the arbitration hearing with Hyman Lippitt began, Defendant and Lameti told Hyman Lippitt of their recent recordation of a $1,000,000 plus mortgage on the Novi Property and refused to pay Hyman Lippitt more than a small fraction of what it was owed.

(f) Hyman Lippitt elected to proceed with the arbitration hearing rather than settle for the small amount offered.

17.    Despite Defendant's assurances that the phony mortgage would not be used to harm trust beneficiaries, in late 2014 and early 2015, unbeknownst to Plaintiff and other trust beneficiaries, Defendant and his agent Lameti and their lawyers used the wires and the mail to demand that the phony mortgagor pay the phony $1,121,974 promissory note debt, to arrange a sham January 27, 2015 mortgage foreclosure sale of the Novi Property when payment was not made, and to have Defendant appear on behalf of the phony mortgagee at that sale and bid in the phony mortgage debt (which was substantially less than the Novi Property's fair market value). Consequently, on or about February 2, 2015 a sheriff's deed purportedly conveying the Novi Property to the phony mortgagee, "Kevin Adell/STN.com, Inc.," was recorded.  See Exhibit 9.

18.    Knowing that Plaintiff had been misled to believe that her beneficial interests were protected, Defendant and his agent Lameti knew, but concealed from Plaintiff, that in 2014-2015:

(a) Hyman Lippitt obtained an arbitration award and a judgment for $428,600 (more than twice what Hyman Lippitt had initially sought) against ABCT and the 3 trusts and had filed a lawsuit to void the phony mortgage.

(b) Defendant had demanded that the phony mortgagor pay the phony $1,121,974 debt.

(c) A sham mortgage foreclosure sale of the Novi Property had been scheduled and advertised.

(d) That sham mortgage foreclosure sale of the Novi Property had occurred on January 27, 2015 at which the Defendant, for the phony mortgagee, bid in the phony debt.

(e) A Sheriff's deed for the Novi Property had been issued to the phony mortgagee and recorded on February 2, 2015.

(f) Hyman Lippitt had amended its lawsuit in order to also void the sham foreclosure sale and the Sheriff's deed, not just the phony mortgage.

(g) The Oakland County Circuit Court had entered an Order in June 2015, over the objection of both Defendant and Lameti (Plaintiff's trustee), which extended from July 27, 2015 to at least December 1, 2015 the period in which the Novi Property could be redeemed from the foreclosure sale. See, Exhibit 9.

(h) Defendant agreed in September 2015 to pay Hyman Lippitt $325,000 to avoid an October 2015 trial of whether the phony mortgage and sham foreclosure sale were fraudulent.

(i)  Before paying Hyman Lippitt that $325,000, Defendant insisted on entry of a November 2, 2015 Order in Oakland County Circuit Court which set aside the aforesaid June 2015 Order extending the redemption period to at least December 1, 2015 (see Exhibit 11), effectively eliminating the chance of any redemption of the Novi Property by or for the benefit of the 3 trusts or the trust beneficiaries.

(j)  Nothing had been or would be done by Defendant or Lameti to redeem or otherwise protect Plaintiff's beneficial interests in the Novi Property, e.g. they did not even inform Plaintiff of her loss, much less her rights.

19.  If the truth had not been concealed from Plaintiff, she could and would have investigated and protected her interests, e.g. by contesting the phony debt, the phony note, the phony mortgage, and/or the sham foreclosure sale and/or by seeking a means to redeem the Novi Property or recover the value of the beneficial interest she lost.

20.  For several years after 2015, Defendant and Lameti continued their practice of using the wires and the mail to disseminate a series of false pretenses, misrepresentations, bad faith promises and omissions that were calculated to, and did, mislead Plaintiff and other trust beneficiaries to believe that their beneficial interests in the Novi Property still were and would be protected; that misconduct was calculated to, and did, (a) prevent Plaintiff and other trust beneficiaries from

discovering their claims and from enforcing their rights and (b) mislead Plaintiff and other trust beneficiaries to believe that the Novi Property was being and would be held, marketed or developed for the benefit of all trust beneficiaries (including Plaintiff).  For example:

(a) Even after the undisclosed sham mortgage foreclosure sale on January 27, 2015, Defendant and/or Lameti received by mail, deposited and used trust beneficiaries' payments on account of Novi Property taxes which were paid on or about February 14, 2015 and, thus, benefitted only Defendant.

(b) Shortly after that sham mortgage foreclosure sale, Defendant and Lameti used the wires and media to announce publicly their purported plan to form a Delaware entity to protect the trust beneficiaries' interests in the Novi Property.

(c) Year after year until 2019, Defendant and Lameti used the wires and mail to communicate more information about the Novi Property to trust beneficiaries, at least some of whom had demonstrated to Defendant and Lameti an interest in helping to lease, sell, or develop the Novi Property; for example, trust beneficiary Michael Adell, whom Defendant and Lameti now state was the "point person" for other trust beneficiaries, had several communications per year, using the wires and mail, with Defendant and Lameti concerning the Novi Property, e.g., about (1) the NEC, Hyman Lippitt and Novi Trade Center

matters, (2) leasing, marketing or developing the Novi Property; (3) the demolition of the industrial building on the Novi Property, and/or (4) collecting from trust beneficiaries contributions of money (usually twice a year until 2016) to pay property taxes on the Novi Property when Defendant or Lameti said ABCT or the 3 trusts were unable to pay those taxes.

(d) Defendant and his agent Lameti repeatedly used the wires and mail to inform trust beneficiaries that multiple companies had expressed interest in purchasing or developing all or part of the Novi Property, e.g., The Dump, Menards, Comeau Pico, Target, Burton Katzman, and Beaumont Health, that some had made offers (e.g. Beaumont Health's $19,820,000 offer in December 2017 for the Novi Property) which they deemed too low, and that no one would ever get the Novi Property for less than what it was really worth.

(e) Defendant and his agent Lameti periodically used the wires to thank trust beneficiaries for help and to assure them that the Novi Property was in good hands, that all the trust beneficiaries would be protected and benefit whenever the Novi Property was sold or developed, and that Defendant and Lameti would not let anyone steal the Novi Property.

(f) Periodically, one or more trust beneficiaries used the wires to compliment and thank Defendant for the time spent concerning the Novi Property; when it was suggested that payment be made for those efforts before proceeds were

distributed to trust beneficiaries, Defendant declined and stated that he wanted to preserve the Marvin, Frank, and Robert Adell family legacy and the Novi Property water tower which Defendant had emblazoned with the "ADELL" family name.

(g) Continuously until 2019, Defendant and his agent Lameti used or caused their subordinates to use the wires and mail to continue to deceive the trust beneficiaries; while concealing the phony debt, the phony note, the phony mortgage, the phony mortgagor, the phony mortgagee, the sham mortgage foreclosure sale, the Sheriff's deed, and the redemption period and its termination, Defendant and his agent Lameti discussed improvements to the Novi Property and alternative marketing, lease, and development opportunities for, ostensibly, the benefit of all trust beneficiaries, including Plaintiff; for example:

    i.   July 25, 2012: Quenton Ross, Senior Editor and Producer of The Word Network which Defendant controlled, used the wires to send trust beneficiary Michael Adell an email at Defendant's direction with a commercial promoting the live-traffic cams on the "ADELL" water tower.

    ii.   August 7, 2012: John Mattiello, Director of Marketing for The Word Network, which Defendant controlled, used the wires to send trust

beneficiary Michael Adell an email at Defendant's direction with a link to the new water tower website and, also at Defendant's direction, used the mail to ship miniature replica water towers for marketing purposes.

iii.   August 22, 2012: John Mattiello, again at Defendant's direction, used the wires to send trust beneficiary Michael Adell renderings of Adell Towers (a proposed office building development for the Novi Property) and to state that trust beneficiary Michael Adell could share them with the other trust beneficiaries, including Plaintiff.

iv.   April 13, 2013: Defendant used the wires to invite trust beneficiary Michael Adell, Plaintiff, and the husband of trust beneficiary Rhonda Satovsky) to attend a party hosted by Defendant for the City of Novi to show appreciation for its support of Burton Katzman's proposed development of Adell Towers on the Novi Property.

v.   August 20, 2013: Lameti used the wires to email trust beneficiary Michael Adell a memo from Burton Katzman regarding the marketing status of the Novi Property; the attachments sent to trust beneficiary Michael Adell were material to be shared at a City of Novi meeting scheduled for September 4, 2013.

vi.   May 16, 2014 (after recordation of the phony mortgage): At

Defendant's direction, an employee of The Word Network, which Defendant controlled, used the mail to ship trust beneficiaries more miniature replicas of the "ADELL" water tower on the Novi Property.

vii.    May 29, 2014: Lameti used the wires to email trust beneficiary Michael Adell a 31-page profile of the City of Novi, and two (2) surveys of the Novi Property for use in efforts to market the Novi Property.

viii.   June 4, 2014: Defendant used the wires to text trust beneficiary Michael Adell "great job today," after he had left Defendant a message that trust beneficiary Michael Adell had contacted Top Golf to gauge its interest in building a site on the Novi Property.

ix.     October 31, 2014 (on the verge of Defendant employing attorneys to foreclose the mortgage), Defendant used the mail to send Plaintiff and other trust beneficiaries a large aerial photograph of the "Adell Water Tower" to display in their homes and to advise that Defendant and Lameti had obtained the City of Novi's approval for a mixed used development on the Novi Property with no height restriction and were meeting with a foremost urban retail planning consultant to bring investors to develop the Novi Property with a substantial

land lease and no risk to the trusts.

x.   May 1, 2015: Defendant used the wires to text trust beneficiary Michael Adell that Defendant had had the huge "ADELL" water tower on the Novi Property power washed.

xi.   July 2, 2015 (after the sham foreclosure sale but during the court-ordered extension of the redemption period): trust beneficiary Defendant and/or Lameti used the wires to participate in a conference call with Top Golf and trust beneficiary Michael Adell regarding Top Golf's interest in having a site on the Novi Property.

xii.   July 13, 2015: Lameti used the wires to email trust beneficiary Michael Adell a four (4) page PDF which Lameti said that Defendant had furnished to the City of Novi to promote an "Adell Towers" development on the Novi Property.

xiii.   July 18, 2015: Defendant used the wires to text trust beneficiary Michael Adell that Defendant had added lights to the "ADELL" water tower on the Novi Property.

xiv.   September 18, 2015 (during the court-ordered extension of the redemption period): Defendant used the wires to text trust beneficiary Michael Adell that CBRE, a commercial real estate

broker, had two (2) parties interested in purchasing all or part of the Novi Property.

xv.  September 18, 2015: Lameti used the wires to email trust beneficiary Michael Adell a copy of a letter of intent from the Drury Inn, which had interest in purchasing a site on the Novi Property.

xvi.  September 21, 2015: Lameti used the wires to email trust beneficiary Michael Adell a preliminary site plan for the Drury Inn site on the Novi Property.

xvii.  September 21, 2015: Defendant was quoted in Crain's regarding <u>Defendant's plan to form a Delaware partnership of the trust beneficiaries</u>, one of which was Plaintiff, to oversee development of the Novi Property.

xviii.  February 21, 2016 (after Defendant had caused a termination of the court- ordered extension of the redemption period): Defendant used the wires to call trust beneficiary Michael Adell with an update on the Novi Property.

xix.  April 25, 2016: Defendant used the wires to text trust beneficiary Michael Adell site plans and a logo for The Water Factory on the Novi Property.

xx.  February 1, 2017: Defendant used the wires to text trust beneficiary

Michael Adell, "Don't worry Michael, the [Novi] property is in good hands."

xxi. August 7, 2017: Defendant used the wires to text trust beneficiary Michael Adell that Defendant would be calling trust beneficiary Michael Adell in five (5) minutes with an update on the Drury Inn project for the Novi Property.

xxii. August 13, 2017: Defendant used the wires to text trust beneficiary Michael Adell an article about Beaumont Hospital's interest in purchasing the Novi Property.

xxiii. April 9, 2018 (after Defendant caused the Novi Property to be quitclaimed to Orville): Defendant used the wires to text trust beneficiary Michael Adell a two-sided postcard that Defendant proposed to mail to all Novi residents promoting Adell Center at the Novi Property.

xxiv. April 11, 2018: Defendant used the wires to text trust beneficiary Michael Adell a Fox 2 Detroit article about the 3 trusts' past and future right to receive about $20,000/year from the City of Novi for a construction easement for a road that the City of Novi never built near the Novi Property.

xxv. April 12, 2018: Defendant used the wires to text trust beneficiary

Michael Adell an article from the Oakland Press regarding the Adell Center on the Novi Property.

xxvi.   April 14, 2018: Defendant used the wires to text trust beneficiary Michael Adell an mp3 of a radio plug about Adell Center at the Novi Property.

xxvii.   July 13, 2018: Defendant used the wires to text trust beneficiary Michael Adell a rendering of the Adell Center on the Novi Property as well as a Detroit Free Press article about the City Planning Commission postponing a hearing about the Adell Center development on the Novi Property.

Again, according to Defendant and Lameti, trust beneficiary Michael Adell was the "point person" for other trust beneficiaries.

21.   Defendant and his agent Lameti also failed to inform and concealed from Plaintiff and other trust beneficiaries that:

(a) in or about September 2017 Defendant formed Orville Properties, LLC ("Orville"), a purported Delaware limited liability company, to develop the Novi Property;

(b) in or late 2017 and/or early 2018 Defendant squandered the opportunity to sell the Novi Property to Beaumont Health for $19,820,000 or more by refusing

to sign Beaumont Health's proposed non-disclosure agreement after Defendant had publicly ridiculed Beaumont Health's $19,820,000.

(c) in or about January 2018, Defendant signed and had recorded quitclaim deeds in order to purportedly convey the Novi Property from the phony mortgagee to Orville;

(d) in or about October 2018, Defendant caused Orville to sign and record a master deed that purportedly converted the Novi Property into a site condominium of nine (9) units and common elements called "Adell Center"; and

(e) thereafter Defendant and/or his agent Lameti caused Orville to market and sell Adell Center site condominium units to others in order to receive millions of dollars for the purported sale of units.

Defendant, his agent Lameti and their lawyers used the wires and the mail to accomplish each of the foregoing.

22.     Individually and collectively, Defendant's and his agent Lameti's conduct and aforesaid false pretenses, misrepresentations and bad faith promises, e.g. to the effect that Plaintiff's beneficial interests in the Novi Property were protected, were calculated to induce, and did induce, Plaintiff not to investigate and protect her rights.

23.     Defendant and his agent Lameti never disclosed to and, instead, concealed from Plaintiff Defendant's scheme to deceive, cheat and defraud Plaintiff and other trust beneficiaries of their interests in the Novi Property and other trust assets. As detailed herein, Defendant, directly and by his agent Lameti, took affirmative steps to conceal Defendant's fraudulent scheme and aforesaid acts and omissions; inter alia:

(a) both before and after the sham foreclosure sale, Defendant continued to accept and use trust beneficiaries' money to pay property taxes on the Novi Property, which benefitted only Defendant; and

(b) until at least 2019 Defendant used the wires and mail to, inter alia, communicate with trust beneficiaries regarding improvements to the Novi Property and efforts to market, develop, or lease the Novi Property for the supposed benefit of all trust beneficiaries.

24.     Defendant and his agent Lameti essentially obstructed Plaintiff from, inter alia, contesting the phony debt, the phony note, the phony mortgage, the sham mortgage foreclosure sale, and the Sheriff's deed, by their lies, deceit and concealment.

25.     Defendant and his agent Lameti fraudulently concealed from Plaintiff facts that, if Plaintiff had known them, would have put Plaintiff on notice that she had claims against, inter alia, Defendant, Lameti and possibly others; alternatively,

Defendant and his agent Lameti had, and breached, a duty to disclose to Plaintiff the truth about the facts described above.

26.    Defendant and his agent Lameti's wrongdoing transformed Defendant's beneficial ownership interest in the valuable Novi Property from 11% to 100%, i.e., effectively cheating all other trust beneficiaries, including Plaintiff, of millions of dollars.

27.    In addition, upon information and belief, Defendant, directly and by his agent Lameti, misappropriated other trust assets, and Plaintiff's beneficial interest therein, including without limitation the right to one-third of (a) about $20,000/year paid by the City of Novi for a construction easement on the Novi Property and (b) proceeds from sale of material salvaged from the demolition of the 300,000 sq/ft. building on the Novi Property.

28.    Plaintiff did not discover and should not have discovered until less than two (2) years ago her claims that Defendant deceived, cheated and defrauded her; if Plaintiff had earlier known the truth, Plaintiff could and would have investigated and taken steps to protect her rights, e.g. sue Defendant sooner.

## **COUNT I**

29.    Plaintiff incorporates by reference paragraphs 1 to 28, above.

30.    Defendant, a person within the meaning of 18 USC 1961 and while employed by or associated with the enterprise described below, conducted and/or participated

in and/or is conducting and/or participating in the conduct of the enterprise's affairs through a pattern of racketeering activity in violation of 18 USC 1962(c), by reason of which Plaintiff was injured in her property.

31.    The enterprise was and is an association in fact consisting of at least Defendant and Lameti and possibly other attorneys acting under Defendant's direction and/or control and whose services were used to perpetrate and further Defendant's and the enterprise's illegal purposes and conduct. Of the members of or participants in the enterprise, at least Defendant and Lameti conducted themselves with awareness of the wrongful means and ends of the enterprise.

32.    The enterprise was and is engaged in, and its actions had and have an effect on, and a substantial connection with, interstate commerce. For example, the enterprise, directly and indirectly, caused interstate transactions with trust beneficiaries and did and does solicit citizens and residents of states other than Michigan to engage in interstate transactions to purchase and/or develop property in Michigan, and those out-of-state citizens who did purchase such property did and do engage in interstate commerce to develop and/or use the portions of that property that they purchased.

33.    The enterprise had and has a defined structure and framework for carrying out directives to accomplish the enterprise's purposes, and its members or participants functioned together to use the means and accomplish the ends of the enterprise; that

structure was and is separate from the pattern of racketeering activity; the enterprise was and is not an ad hoc association of individuals. For example, Defendant was and is the equivalent of the enterprise's chief executive officer, and Lameti was and is Defendant's agent and assistant and the equivalent of the enterprise's chief financial officer; Lameti did and does carry out some of Defendant's directives and delegate some to lawyers and possibly others whose services perpetrate or further the criminal or fraudulent purposes of the enterprise, and reports to Defendant about the status of the means being used to accomplish his directives did and do flow up to him directly or through Lameti.

34.     The enterprise began at least one decade ago and still exists, e.g. as evidenced by the continuing objective to sell one or more previously unsold Adell Center units to purchasers who may not receive marketable title; therefore, the longevity of the enterprise was and is sufficient to achieve its primary purpose.

35.     The primary purpose of the enterprise was and is to enrich Defendant by using fraud, deceit, false pretenses and similar unlawful means to cheat others out of property to which they are entitled and to which Defendant is not entitled.

36.     The enterprise was and is an instrument through which the pattern of racketeering activity was and is conducted, and Defendant's conduct of and/or participation in the enterprise involved the pattern of racketeering activity detailed above.

37.     The pattern of racketeering activity continued for many years and threatens to continue, amounting to systematic fraud and a continuing threat thereof. Predicate acts were committed by Defendant or his agents as part of a scheme that projects into the future and poses a threat of repetition for an indefinitely extended period. For example, a remaining objective is to market through Defendant's Orville one or more unsold Adell Center site condominium units even though the 3 trusts never mortgaged the Novi Property or conveyed it to Orville or its predecessors in interest. Alternatively, the predicate acts were and are part of the enterprise's regular way of doing business, and the racketeering activity consisted of repeated conduct and a series of related predicate acts extending over many years detailed above. For example:

    a.  In 2013-2015 Defendant conducted or participated in the conduct of the enterprise by a pattern of racketeering activity in violation of USC § 1341 and 1343 to hinder delay, and to defraud Hyman Lippitt, P.C., a creditor of ABCT/3 trusts, i.e. by encumbering the Novi Property with a phony mortgage securing payment of a phony $1,121,974 debt in order to deter Hyman Lippitt from obtaining payment for its services (absent that asset, ABCT/3 trusts were incapable of paying that creditor what it was owed); rather than mortgage or sell 3 trusts' Novi Property in order to pay Hyman Lippitt the money it was owed, Defendant used the wires and used the mail to record the phony

mortgage, to schedule and conduct a sham mortgage foreclosure sale, and to dispute whether the mortgage and foreclosure were void, thus hindering and delaying for years Hyman Lippitt's recovery of any part of the amount to which it was entitled and ultimately preventing Hyman Lippitt from recovering some of that amount.

b. Since at least 2015 Defendant has been conducting or participating in the conduct of the enterprise through a pattern of racketeering activity in violation of 18 USC 1341 and 1343 to defraud Plaintiff and other trust beneficiaries of their beneficial interests in the Novi Property (e.g. by foreclosing that discharged, phony mortgage, by bidding at the foreclosure sale the amount of the phony debt, by not redeeming the Novi Property from the foreclosure sale, by quitclaiming the Novi Property to Defendant's Orville and by keeping sales proceeds) and other trust assets.

c. Since at least 2019 Defendant has been conducting or participating in the conduct of the enterprise through a pattern of racketeering activity in violation of 18 USC 1341 and 1343 to defraud those who purchase Adell Center units from Defendant's Orville; purchasers are misled to believe that they acquire marketable title to Adell Center units when they pay Orville the purchase price, but 3 trusts which had record title to the Novi Property never mortgaged or conveyed the Novi Property to Orville or its predecessors in interest.

38.     By conducting the enterprise through that pattern of racketeering activity, Defendant, inter alia, (a) did hinder, delay and defraud Hyman Lippitt, P.C. from obtaining payment for its legal services, (b) did convert, embezzle, steal or misappropriate for Defendant's benefit the beneficial interests of Plaintiff and other trust beneficiaries in the Novi Property worth millions; and (c) after converting the Novi Property into a site condominium called Adell Center and marketing condominium units for millions of dollars via interstate commerce to end users, did and will profit by selling units to purchasers who have been misled to believe that they are acquiring marketable title when, in fact, the 3 trusts which had record title to the Novi Property never mortgaged or conveyed the Novi Property to the purchasers' predecessor in interest.

39.     Defendant's aforesaid predicate acts constitute a pattern of racketeering activity indictable under 18 USC 1341 and 18 USC 1343; the time, place and content of Defendant's false pretenses, representations and promises that constituted individual, but related, instances of mail or wire fraud are detailed above.

40.     Defendant's predicate acts were related; for example, the acts shared the same primary purpose, e.g. defrauding trust beneficiaries; Defendant and Lameti were the principal participants in the acts; the victims were closely related by blood to one another, and the means of commission, i.e. mail and wire fraud, were substantially similar and not isolated events.

41.    The predicate acts of racketeering activity occurred literally dozens of times over many years; most, if not all, of the predicate acts occurred within 10 years of one another.

42.    Plaintiff and other trust beneficiaries reasonably relied upon Defendant's false pretenses, representations, and promises, e.g. by not initiating efforts to protect their rights until after learning that they had been cheated out of their beneficial rights.

43.    Defendant's predicate acts directly and proximately caused Plaintiff to suffer injury to her property; for example, Plaintiff lost her right to own an undivided one-third interest in the Novi Property and her beneficial interest in other trust property. But for Defendant's predicate acts, Plaintiff would not have been damaged. Moreover, when Defendant committed the predicate acts, Defendant wanted and expected that Plaintiff would be injured in her property.

44.    As a consequence of Defendant's violation of 18 USC 1962(c), Plaintiff is entitled to treble damages, reasonable attorney fees, and all other relief provided by 18 USC 1964.

## **COUNT II**

45.    Plaintiff incorporates by reference paragraphs 1 to 44, above.

46.    Defendant and his agent Lameti made and caused to be made to Plaintiff, directly or indirectly, false pretenses, misrepresentations, and bad faith promises ("misrepresentations") alleged above.

47.     At the time of their misrepresentations, Defendant and his agent Lameti had a bad faith intent to make, and to not fulfill, their misrepresentations which were devices to perpetrate a fraud and made without a genuine intention to perform. That is, Defendant and Lameti materially misrepresented their intended future conduct under circumstances that they expected or should have reasonably expected their assurances to be relied upon by Plaintiff.

48.     Defendant and his agent Lameti also deceived Plaintiff by purposeful omissions, i.e., half-truths and purposely concealed facts, as alleged above.

49.     Defendant and his agent Lameti knew that their misrepresentations and deceitful omissions were false when they were made; alternatively, those misrepresentations and deceitful omissions were made recklessly.

50.     Defendant's and Lameti's misrepresentations and deceitful omissions were made with the intention to induce reliance by Plaintiff; alternatively, Defendant and Lameti reasonably should have known that such would induce reliance by Plaintiff.

51.     Plaintiff acted in reliance upon Defendant's and Lameti's misrepresentations and deceitful omissions, e.g., not taking action to enforce Plaintiff's rights.

52.     As a direct, natural, probable, and proximate result of Defendant's and Lameti's conduct, Plaintiff suffered damages, including without limitation loss of her beneficial interests in assets of Robert's Trust and anxiety, anger, humiliation, embarrassment, aggravation, hurt feelings, and loss of trust.

53.   Because Defendant's and Lameti's misconduct was malicious, willful or in wanton disregard of Plaintiff's rights, Plaintiff is entitled to recover exemplary damages.

54.   If Plaintiff's claims were otherwise barred by the statute of limitations, the statutory period was tolled because (a) Defendant and his agent Lameti fraudulently concealed from Plaintiff the aforesaid facts about the phony debt and mortgage, its foreclosure and redemption rights which, had the truth been known to Plaintiff, would have caused Plaintiff to investigate and protect her rights or, alternatively, (b) Defendant (Lameti's principal, who knew or had reason to believe that his agent Lameti had not fulfilled his duty to disclose the truth to Plaintiff) and his agent Lameti had, but breached, an affirmative duty to disclose the truth to Plaintiff.

## COUNT III

55.   Plaintiff incorporates by reference paragraphs 1 through 54, above.

56.   After the mortgage was recorded, Defendant, orally and in writing (e.g. by signing and sending the mortgage discharge), promised and agreed, expressly or impliedly, that the mortgage would not be foreclosed or otherwise used to the disadvantage of the other trust beneficiaries, including Plaintiff.

57.   No consideration was necessary to make that promise and agreement valid and binding because the executed and notarized mortgage discharge is a written modification or discharge within the meaning of MCL 566.1; alternatively, there

was consideration, e.g. trust beneficiary Michael Adell's promise not to send a copy of the mortgage discharge to others.

58.    Defendant made that promise to and agreement with trust beneficiary Michael Adell on behalf of other trust beneficiaries, including Plaintiff; alternatively, Plaintiff was an intended third-party beneficiary of Defendant's promise and agreement.

59.    There was no condition precedent to the performance of Defendant's aforesaid obligation; alternatively, if there were one, it was fulfilled or excused.

60.    On January 27, 2015 and thereafter, Defendant breached his contractual obligation by, inter alia, causing the sham mortgage foreclosure sale to occur and, after recordation of the Sheriff's deed, not reconveying the Novi Property to the trustee of the 3 trusts and, instead, purporting to convey the Novi Property to Orville in 2018 and subsequently causing Orville to subsequently market and sell units to non-parties.

61.    As a direct, natural, probable, and proximate result of Defendant's conduct, Plaintiff suffered damages, including without limitation loss of her beneficial interests in assets of Robert's Trust and anxiety, anger, humiliation, embarrassment, aggravation, hurt feelings, and loss of trust.

62.    Because Defendant's misconduct was malicious, willful or in wanton disregard of Plaintiff's rights, Plaintiff is entitled to recover exemplary damages.

63.     If Plaintiff's claims were otherwise barred by the statute of limitations, the statutory period was tolled because (a) Defendant and his agent Lameti fraudulently concealed from Plaintiff the aforesaid facts about the phony debt and mortgage, its foreclosure and redemption rights which, had the truth been known to Plaintiff, would have caused Plaintiff to investigate and protect her rights or, alternatively, (b) Defendant (Lameti's principal, who knew or had reason to believe that his agent Lameti had not fulfilled his duty to disclose the truth to Plaintiff) and his agent Lameti had, but breached, an affirmative duty to disclose the truth to Plaintiff.

## **COUNT IV**

64.     Plaintiff incorporates by reference paragraphs 1 through 63, above.

65.     Defendant made the aforesaid promises to or for the benefit of Plaintiff and others as detailed above.

66.     Defendant reasonably expected or should have reasonably expected that his promises would induce Plaintiff to commit one or more definitive acts of substantial character, e.g., to cause Plaintiff not to investigate and protect her rights and beneficial interests with respect to the Novi Property.

67.     Plaintiff relied on Defendant's promises to Plaintiff's detriment, e.g., Plaintiff did not enforce her rights and beneficial interests; instead, Plaintiff cooperated and did not interfere in what Plaintiff believed to be Defendant's efforts to sell or develop the Novi Property for the benefit of all trust beneficiaries, including Plaintiff.

68.    Defendant's promises should be enforced to avoid injustice to Plaintiff.

69.    As a direct, natural, probable, and proximate result of Defendant's conduct, Plaintiff suffered damages, including without limitation loss of her beneficial interests in assets of Robert's Trust and anxiety, anger, humiliation, embarrassment, aggravation, hurt feelings, and loss of trust.

70.    Because Defendant's misconduct was malicious, willful or in wanton disregard of Plaintiff's rights, Plaintiff is entitled to recover exemplary damages.

71.    If Plaintiff's claims were otherwise barred by the statute of limitations, the statutory period was tolled because (a) Defendant and his agent Lameti fraudulently concealed from Plaintiff the aforesaid facts about the phony debt and mortgage, its foreclosure and redemption rights which, had the truth been known to Plaintiff, would have caused Plaintiff to investigate and protect her rights or, alternatively, (b) Defendant (Lameti's principal, who knew or had reason to believe that his agent Lameti had not fulfilled his duty to disclose the truth to Plaintiff) and his agent Lameti had, but breached, an affirmative duty to disclose the truth to Plaintiff.

## COUNT V

72.    Plaintiff incorporates by reference paragraphs 1 through 71, above.

73.    Defendant, by his malfeasance alleged above, acquired Plaintiff's beneficial interests in the Novi Property and other assets of Robert's Trust.

74.    Plaintiff has not been compensated for the loss of the value of her beneficial

interests.

75.   Plaintiff is entitled to be compensated by Defendant for the reasonable value of her beneficial interests.

76.   As a direct, natural, probable, and proximate result of Defendant's conduct, Plaintiff suffered damages, including without limitation loss of her beneficial interests in assets of Robert's Trust and anxiety, anger, humiliation, embarrassment, aggravation, hurt feelings, and loss of trust.

77.   Because Defendant's misconduct was malicious, willful or in wanton disregard of Plaintiff's rights, Plaintiff is entitled to recover exemplary damages.

78.   As a direct, natural, probable, and proximate result of Defendant's and Lameti's conduct, Plaintiff suffered damages, including without limitation loss of her beneficial interests in assets of Robert's Trust and anxiety, anger, humiliation, embarrassment, aggravation, hurt feelings, and loss of trust.

79.   If Plaintiff's claims were otherwise barred by the statute of limitations, the statutory period was tolled because (a) Defendant and his agent Lameti fraudulently concealed from Plaintiff the aforesaid facts about the phony debt and mortgage, its foreclosure and redemption rights which, had the truth been known to Plaintiff, would have caused Plaintiff to investigate and protect her rights or, alternatively, (b) Defendant (Lameti's principal, who knew or had reason to believe that his agent Lameti had not fulfilled his duty to disclose the truth to Plaintiff) and his agent

Lameti had, but breached, an affirmative duty to disclose the truth to Plaintiff.

## COUNT VI

80.    Plaintiff incorporates by reference paragraphs 1 through 79, above.

81.    Disputes and controversies exist concerning whether the note, the mortgage, the mortgage foreclosure sale, and the Sheriff's deed are void or voidable because, inter alia:

(a) ABCT had no actual or apparent authority to mortgage the Novi Property;

(b) the signature of Lameti as the supposed "Trustee" of ABCT, a partnership, did not bind the 3 trusts, which owned the Novi Property, so the mortgage was a nullity;

(c) the note and mortgage were nullities because they were issued to Kevin Adell/STN.com, Inc., which was a fiction and did not exist;

(d)  "Kevin Adell/STN.com, Inc.," which is a fiction and not a legal person, could acquire or convey title of the Novi Property;

(e) neither ABCT nor 3 trusts owed $1,121,974 or the like to anyone, let alone Kevin Adell/STN.com, Inc., which was a fiction, did not exist, had loaned and was owed nothing;

(f) the mortgage discharge terminated any purported validity of the phony mortgage; and

(g) any colorable title to the Novi Property held by "Kevin Adell/STN.com, Inc."

could not be conveyed by quit claim deeds signed by Kevin Adell and STN.com, Inc.

82.    This Court should adjudicate the parties' disputes and controversies so that the parties can guide their future conduct with one another and non-parties accordingly and avoid otherwise necessary litigations.

## COUNT VII

83.    Plaintiff incorporates by reference paragraphs 1-82, above.

84.    Defendant stole, embezzled, and/or converted Plaintiff's property by, inter alia, exercising dominion and control over Plaintiff's intangible personal property, including her beneficial interests in the Novi Property and other assets of Robert's Trust, inconsistent with Plaintiff's rights. For example, Defendant purported to own and convey the Novi Property to Orville and caused Orville to purport to convey parts to others.

85.    At a time when Defendant knew that Plaintiff's property had been stolen, embezzled or converted, Defendant concealed or aided in the concealment of same.

86.    As a direct, natural, probable, and proximate result of Defendant's conduct, Plaintiff suffered damages, including without limitation loss of her beneficial interests in assets of Robert's Trust and anxiety, anger, humiliation, embarrassment, aggravation, hurt feelings, and loss of trust.

87.    Plaintiff, pursuant to MCL 600.2919(a), may recover 3 times the amount of

her actual damages sustained plus costs and reasonable attorney fees.

88.     If Plaintiff's claims were otherwise barred by the statute of limitations, the statutory period was tolled because (a) Defendant and his agent Lameti fraudulently concealed from Plaintiff the aforesaid facts about the phony debt and mortgage, its foreclosure and redemption rights which, had the truth been known to Plaintiff, would have caused Plaintiff to investigate and protect her rights or, alternatively, (b) Defendant (Lameti's principal, who knew or had reason to believe that his agent Lameti had not fulfilled his duty to disclose the truth to Plaintiff) and his agent Lameti had, but breached, an affirmative duty to disclose the truth to Plaintiff.

## <u>COUNT VIII</u>

89.     Plaintiff incorporates by reference paragraphs 1-88, above.

90.     As alleged above, Defendant stole, embezzled or wrongfully converted Plaintiff's beneficial interests in assets of Robert's Trust.

91.     Defendant refused, without a colorable claim of right, to transfer possession of trust property to the trustee; alternatively, any demand that Defendant do so was futile given the principal/agent relationship between Defendant and Lameti and the former's control of the latter.

92.     As a direct, natural, probable, and proximate result of Defendant's conduct, Plaintiff and Robert's Trust suffered damages, including without limitation loss of an undivided interest in the Novi Property, proceeds paid by the City of Novi, and

proceeds from salvaged materials.

93.     MCL 700.7813(4) provides that:

> If a person embezzles or wrongfully converts trust
> property, or refuses, without colorable claim of right, to
> transfer possession of trust property to the current trustee
> upon demand, the person is liable in an action brought by
> the current trustee, or the beneficiary of the trust for the
> benefit of the trust, for double the value of any property
> embezzled, converted, or wrongfully withheld from the
> current trustee.

94.     As such, Defendant is liable to Plaintiff and/or for the benefit of Robert's Trust

for double the value of the property embezzled, converted or withheld.

95.     If Plaintiff's claims were otherwise barred by the statute of limitations, the

statutory period was tolled because (a) Defendant and his agent Lameti fraudulently

concealed from Plaintiff the aforesaid facts about the phony debt and mortgage, its

foreclosure and redemption rights which, had the truth been known to Plaintiff,

would have caused Plaintiff to investigate and protect her rights or, alternatively, (b)

Defendant (Lameti's principal, who knew or had reason to believe that his agent

Lameti had not fulfilled his duty to disclose the truth to Plaintiff) and his agent

Lameti had, but breached, an affirmative duty to disclose the truth to Plaintiff.

## COUNT IX

96.      Plaintiff incorporates by reference paragraphs 1-95, above.

97.     Pursuant to the Michigan Trust Code and Robert's Trust, Lameti's duties to

Plaintiff included, without limitation, the following:

(a) to administer the trust in good faith, expeditiously, in accordance with its terms and purposes, and in accordance with the Michigan Trust Code;

(b) to administer the trust solely in the interests of Plaintiff;

(c) to act as would a prudent person in dealing with a property of another;

(d) to use Lameti's skills as a licensed Michigan attorney and as a certified public accountant in the interests of Plaintiff;

(e) to keep adequate records of the administration of the trust;

(f) to take reasonable steps to take control of and to protect the trust property;

(g) to take reasonable steps to enforce claims of the trust and to defend claims against the trust;

(h) to keep Plaintiff reasonably informed about the administration of the trust and of the material facts necessary to protect her interests;

(i) to send to Plaintiff at least annually a report of the trust property, liability, receipts, and disbursements, including the source and amount of the trustee's compensation, a listing of the trust property, and the market values of same;

(j) to administer the trust according to the terms of the trust, as provided by MCL 700.7801;

(k) to be loyal to Plaintiff;

(l) to act with ordinary skill and prudence; and

(m)      to refrain from engaging in negligent, fraudulent or criminal conduct, including the duty to refrain from self-dealing, malfeasance, misfeasance, and nonfeasance.

98.    Lameti's conduct described above constituted breaches of his aforesaid duties to Plaintiff; <u>inter alia</u>, Lameti:

(a) failed to furnish an accounting to Plaintiff at least annually in violation of paragraph (5) of Robert's Trust Agreement;

(b) failed to appoint a co-trustee in violation of paragraph (10) of Robert's Trust Agreement;

(c) failed to furnish to Plaintiff at least annually a report of the trust property, liability, receipts, and disbursements and a listing of trust assets in violation of MCL §700.7814(3);

(d) violated MCL 700.7813(1), (3), and (4);

(e) allowed Defendant, Lameti's employer, to control or unduly influence management of Robert's Trust, ABCT, and their assets;

(f) did not leave final decisions about the property owned by Robert's Trust to all trust beneficiaries;

(g) failed to notify Plaintiff that he might contend that Robert's Trust had supposedly terminated on July 27, 2015;

(h) failed to distribute to Plaintiff an undivided one-third interest in the Novi Property; and

(i) engaged in the fraud, deceit, lies and other acts and omissions described above.

99.   Defendant aided and abetted Lameti in his breaches of duty, e.g., causing Lameti to sign the phony demand note and the phony mortgage and to not interfere with the sham mortgage foreclosure, the purported transfer of the Novi Property to Orville, or Orville's sales of parts of the Novi Property to others.

100.   As a direct, natural, probable, and proximate result of Defendant's conduct, Plaintiff suffered damages, including without limitation loss of her beneficial interests in assets of Robert's Trust and anxiety, anger, humiliation, embarrassment, aggravation, hurt feelings, and loss of trust.

101.   Because Defendant's misconduct was malicious, willful or in wanton disregard of Plaintiff's rights, Plaintiff is entitled to recover exemplary damages.

102.   If Plaintiff's claims were otherwise barred by the statute of limitations, the statutory period was tolled because (a) Defendant and his agent Lameti fraudulently concealed from Plaintiff the aforesaid facts about the phony debt and mortgage, its foreclosure and redemption rights which, had the truth been known to Plaintiff, would have caused Plaintiff to investigate and protect her rights or, alternatively, (b) Defendant (Lameti's principal, who knew or had reason to believe that his agent

Lameti had not fulfilled his duty to disclose the truth to Plaintiff) and his agent Lameti had, but breached, an affirmative duty to disclose the truth to Plaintiff.

## **COUNT X**

103.  Plaintiff incorporates by reference paragraphs 1-102, above.

104.  After about 2007, Lameti was the actual or apparent agent of Defendant with respect to, <u>inter alia</u>, the Novi Property, ABCT, the three (3) trusts, and trust beneficiaries, and Defendant cloaked and vested Lameti with actual and apparent authority to be Defendant's agent. For example, Defendant's agent Lameti:

(a) carried out the wishes of Defendant vis-à-vis the Novi Property and expressly or tacitly consented to Defendant's conduct described above;

(b) allowed or assisted Defendant's possession and use of the Novi Property for Defendant's proposed giant flea market;

(c) allowed or assisted Defendant to control aspects of litigation concerning the Novi Property;

(d) appeased Defendant instead of performing his duties as trustee;

(e) executed the phony promissory note and phony mortgage (with its allegedly false statement that Lameti had drafted it) when he had no obligation to do to in order to satisfy Defendant;

(f) participated in the foreclosure of the Novi Property, thus helping Defendant to harm Plaintiff;

(g) allowed Defendant to hire contractors for the Novi Property;

(h) followed Defendant's instructions as to what to send and what not to send to Plaintiff and other trust beneficiaries about the Novi Property; and

(i) opposed a judicial extension of the redemption period and sought a termination of that extension, contrary to the interests of the trust beneficiaries.

105.   As Defendant's actual or apparent agent, at Defendant's direction, and for Defendant's benefit, Lameti breached his duties to Plaintiff as aforesaid.

106.   Consequently, Defendant is vicariously liable to Plaintiff for all damages caused to Plaintiff and all relief to which Plaintiff is entitled from Lameti for his breaches of duty.

107.   As a direct, natural, probable, and proximate result of Defendant's conduct, each Plaintiff suffered damages, including without limitation loss of her beneficial interests in assets of Robert's Trust and anxiety, anger, humiliation, embarrassment, aggravation, hurt feelings, and loss of trust.

108.   Because Defendant's misconduct was malicious, willful or in wanton disregard of Plaintiff's rights, Plaintiff is entitled to recover exemplary damages.

109.   If Plaintiff's claims were otherwise barred by the statute of limitations, the statutory period was tolled because (a) Defendant and his agent Lameti fraudulently concealed from Plaintiff the aforesaid facts about the phony debt and mortgage, its

foreclosure and redemption rights which, had the truth been known to Plaintiff, would have caused Plaintiff to investigate and protect her rights or, alternatively, (b) Defendant (Lameti's principal, who knew or had reason to believe that his agent Lameti had not fulfilled his duty to disclose the truth to Plaintiff) and his agent Lameti had, but breached, an affirmative duty to disclose the truth to Plaintiff.

## COUNT XI

110.   Plaintiff incorporates by reference paragraphs 1-109, above.

111.   At all pertinent times Plaintiff had an advantageous contractual, business or fiduciary relationship with, and an expectancy from, Lameti, including without limitation the right to have Lameti, and the expectation that Lameti would, distribute to Plaintiff one-third of the Novi Property and other income and corpus of Robert's Trust.

112.   Defendant at all relevant times had actual knowledge of Plaintiff's aforesaid relationship and expectancy.

113.   By his conduct detailed above, Defendant, unlawfully, intentionally, improperly, and unjustifiably interfered with Plaintiff's aforesaid relationship and expectancy.

114.   Defendant did per se wrongful acts and acted for his own benefit when, inter alia, he caused Lameti to give him possession and use of the Novi Property, to sign the phony note and mortgage, to acquiesce in the foreclosure of the mortgage and

Defendant's acquisition of the Novi Property, to oppose and terminate the judicial extension of the redemption period, to conceal the truth from Plaintiff, and to not pursue causes of action against Defendant.

115.  Defendant's interference instigated Lameti's breaches of duty, and Defendant's conduct and actions were designed to, and did, maliciously and tortiously interfere with Plaintiff's beneficial interests in trust assets and adversely impact Plaintiff's aforesaid relationship and expectancy.

116.  Alternatively or additionally, Defendant's conduct was done with malice and unjustified in law for the purpose of invading Plaintiff's aforesaid relationship and/or expectancy in order to unjustly enrich himself, e.g. by converting to his own use Plaintiff's beneficial interests in the Novi Property.

117.  Plaintiff would have benefitted from her relationship and received her expectancy if Defendant Kevin Adell had not so interfered, e.g. Lameti as trustee would have had the ability to distribute to Plaintiff her one-third undivided interest in the Novi Property by merely executing and recording a deed.

118.  As a direct, natural, probable, and proximate result of Defendant's aforesaid conduct, Plaintiff suffered damages, including without limitation loss of her beneficial interests in assets of Robert's Trust and anxiety, anger, humiliation, embarrassment, aggravation, hurt feelings, and loss of trust.

119.  Because Defendant's misconduct was malicious, willful or in wanton

disregard of Plaintiff's rights, Plaintiff is entitled to recover exemplary damages.

120.   As a direct, natural, probable, and proximate result of Defendant's conduct, Plaintiff suffered damages, including without limitation loss of her beneficial interests in assets of Robert's Trust and anxiety, anger, humiliation, embarrassment, aggravation, hurt feelings, and loss of trust.

121.   Because Defendant's misconduct was malicious, willful or in wanton disregard of Plaintiff's rights, Plaintiff is entitled to recover exemplary damages.

122.   If Plaintiff's claims were otherwise barred by the statute of limitations, the statutory period was tolled because (a) Defendant and his agent Lameti fraudulently concealed from Plaintiff the aforesaid facts about the phony debt and mortgage, its foreclosure and redemption rights which, had the truth been known to Plaintiff, would have caused Plaintiff to investigate and protect her rights or, alternatively, (b) Defendant (Lameti's principal, who knew or had reason to believe that his agent Lameti had not fulfilled his duty to disclose the truth to Plaintiff) and his agent Lameti had, but breached, an affirmative duty to disclose the truth to Plaintiff.

## **COUNT XII**

123.   Plaintiff incorporates by reference paragraphs 1-122, above.

124.   By his conduct alleged above, Defendant implicitly undertook to be and became Plaintiff's constructive trustee and owed Plaintiff the same duties that Lameti owed Plaintiff.

125.   Defendant breached those duties to Plaintiff and engaged in self-dealing as alleged above.

126.   As a direct, natural, probable, and proximate result of Defendant's conduct, Plaintiff suffered damages, including without limitation loss of her beneficial interests in assets of Robert's Trust and anxiety, anger, humiliation, embarrassment, aggravation, hurt feelings, and loss of trust.

127.   Because Defendant's misconduct was malicious, willful or in wanton disregard of Plaintiff's rights, Plaintiff is entitled to recover exemplary damages.

128.   If Plaintiff's claims were otherwise barred by the statute of limitations, the statutory period was tolled because (a) Defendant and his agent Lameti fraudulently concealed from Plaintiff the aforesaid facts about the phony debt and mortgage, its foreclosure and redemption rights which, had the truth been known to Plaintiff, would have caused Plaintiff to investigate and protect her rights or, alternatively, (b) Defendant (Lameti's principal, who knew or had reason to believe that his agent Lameti had not fulfilled his duty to disclose the truth to Plaintiff) and his agent Lameti had, but breached, an affirmative duty to disclose the truth to Plaintiff.

WHEREFORE, Plaintiff prays that this Court enter a judgment for Plaintiff against Defendant for all legal and equitable relief to which Plaintiff is found to be entitled including without limitation double and treble damages, exemplary or punitive damages, attorney fees, interest and costs.

**GARRATT & BACHAND, P.C.**

By: */s/ C. William Garratt*
C. William Garratt (P13858)
*Attorney for Plaintiff*
74 West Long Lake Road, Suite 200
Bloomfield Hills, MI 48304

Dated: September 11, 2023
(248) 645-1450/Fax:(248) 645-2311
thefirm@garrattbachand.net