UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOAN TRINGALE,

    Plaintiff,

    v.

KEVIN ADELL,

    Defendant.
_____/

Case No. 23-12309

Hon. George Caram Steeh

OPINION AND ORDER DENYING
DEFENDANT'S MOTION TO DISMISS (ECF NO. 18)

Before the court is Defendant Kevin Adell's motion to dismiss Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons explained below, Defendant's motion is denied.

BACKGROUND FACTS

Plaintiff Joan Tringale is the beneficiary of a trust that owned a partial interest in property located in Novi, Michigan. The Novi property was owned by three brothers – Robert, Franklin, and Marvin Adell – who put the property in three trusts for the benefit of their children. Plaintiff is the beneficiary of the Robert Adell Children's Funded Trust. The beneficiaries of the Franklin Adell Children's Funded Trust are Julie Adell Verona, Laurie Adell Fischgrund, and Defendant Kevin Adell. The beneficiaries of the

- 1 -

Marvin Adell Children's Funded Trust are Michael Adell, Loren Adell, Rhonda Adell Satovsky, and Linda Adell Fitzerman. The trustee of all three trusts was Ralph Lameti, a lawyer and certified public accountant. Lameti was also employed by Defendant Kevin Adell ("Adell").

The Novi property generated rental income until about 2006, when the tenant vacated the property and assigned its leasehold interest to another tenant. Lameti and Adell disputed whether the lease could be assigned, and the property was the subject of litigation for years. Due to the lack of rental income, the trust beneficiaries paid the property taxes for the Novi property from 2009 to 2015. After that, Lameti and Adell told them that the trust income was sufficient to pay the taxes, which had been reduced because of the demolition of the building on the property.

Plaintiff alleges that Adell "acquired control of Lameti" with respect to the trust assets. Adell paid Lameti about $1 million per year and provided the use of luxury vehicles, including a Lamborghini. Lameti allowed Adell to make decisions regarding the property and to act as the public spokesperson for it. Lameti permitted Adell to attempt to develop a flea market on the property, despite the fact that this use was barred by the Novi zoning ordinance. Defendant's company, STN.com Inc., spent over $1 million to promote and develop the flea market plan. Once the City of Novi

refused to re-zone the property, Defendant/STN did not have the ability to recoup the funds spent on the flea market venture. Plaintiff alleges that Lameti and Adell altered the internal accounting of STN to make it appear that the trusts, rather than Defendant, owed the approximately $1 million debt to STN.

In 2013, the Hyman Lippitt law firm was prosecuting an arbitration proceeding against the trusts, in order to collect $200,000 in legal fees arising from the Novi property lease dispute. Plaintiff alleges that Adell was against paying Hyman Lippitt, causing Lameti not to pay what the trusts owed. Adell also caused Lameti to sign a phony mortgage and promissory note for the trusts to pay to Kevin Adell/STN a $1 million "phony debt." The phony mortgage was recorded, ostensibly for leverage in the dispute with Hyman Lippitt. Lameti and Adell told one of the trust beneficiaries, Michael Adell, that the mortgage was for the purpose of "helping negotiate a settlement of Hyman Lippitt's claim," and that it would neither be used against trust beneficiaries nor ever be foreclosed. ECF No. 1 at ¶ 16. Defendant sent Michael Adell a discharge of the mortgage, to demonstrate that it "was a sham and would not be used to harm the trust beneficiaries." *Id.*

Despite these assurances, and without the beneficiaries' knowledge, Defendant and Lameti demanded that the trusts pay the phony mortgage debt. When the debt was not paid, Defendant and Lameti foreclosed on the mortgage and conducted a sale of the Novi property on January 27, 2015. Defendant obtained the property by credit bid, paying the mortgage amount of approximately $1 million, which was substantially less than the property's market value. A sheriff's deed was recorded in the name of Kevin Adell/STN.com Inc. on February 2, 2015. Defendant did not inform the other trust beneficiaries of this transaction.

Subsequently, Defendant and Lameti led the trust beneficiaries to believe that the Novi property continued to be held, marketed, and developed for their benefit. *See* ECF No. 1 at ¶ 20. Even after the sale, trust beneficiaries paid the taxes on the property in 2015. Defendant and Lameti would provide information to the beneficiaries regarding companies who expressed interest in purchasing or developing the property. For example, in 2017, they were told that Beaumont Health offered about $19 million for the property, which Adell deemed "too low." Up until 2019, Defendant often communicated with Michael Adell, whom he regarded as the "point person" for the other beneficiaries, regarding efforts to develop the property.

Meanwhile, Defendant formed Orville Properties, LLC, to develop the property. He recorded a quitclaim deed in 2018, conveying the Novi property to Orville. Through Orville, Defendant and/or Lameti marketed and sold condominium units located on the Novi property.

Plaintiff alleges that Defendant defrauded her by obtaining her beneficial interest in the Novi property through the phony mortgage sale, and that she did not discover the fraud until 2022. She sets forth several claims in her complaint, including a violation of 18 U.S.C. § 1962(c) (RICO), fraud, breach of contract, promissory estoppel, unjust enrichment, embezzlement, conversion, breach of fiduciary duty, and tortious interference. Defendant seeks dismissal, primarily on statute of limitations grounds.

## LAW AND ANALYSIS

I.  Standard of Review

Under Federal Rule of Civil Procedure 8, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8.  To survive a motion to dismiss pursuant to Rule 12(b)(6), the plaintiff must allege facts that, if accepted as true, are sufficient "to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*,

550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint "must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 319 (6th Cir. 1999) (internal quotation marks omitted).

When ruling on a motion to dismiss, the court may "consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). The court may also take judicial notice of news articles; "[s]uch notice, however, is limited: a court may take notice of the documents and what they say, but it '[cannot] consider the statements contained in the document for the truth of the matter asserted.'" *Platt v. Bd. of Comm'rs*, 894 F.3d 235, 245 (6th Cir. 2018); *see also United States v. Allstate Ins. Co.*, 620 F. Supp. 3d 674, 684 (E.D. Mich. 2022).

II.  Standing/Real Party in Interest

As a threshold matter, Defendant argues that Plaintiff is not the real party in interest and that she lacks standing to sue to recover trust assets.

In general, a beneficiary cannot bring a claim to recover on behalf of a trust; rather, the claim belongs to the trustee, who holds legal title for the benefit of the beneficiary. *Apollinari v. Johnson*, 104 Mich. App. 673, 675-76, 305 N.W.2d 565, 567 (1981). "However, where the trustee improperly refuses or neglects to bring suit, the beneficiary may sue in equity." *Id.* In addition, a Michigan statute authorizes beneficiaries to sue:

> If a person embezzles or wrongfully converts trust property, or refused, without colorable claim of right, to transfer possession of trust property to the current trustee upon demand, the person is liable in an action brought by the current trustee, *or the beneficiary of the trust for the benefit of the trust*, for double the value of any property embezzled, converted, or wrongfully withheld from the current trustee.

M.C.L. § 700.7813(4). *See Dice v. Zimmerman*, 2019 WL 3432599, at *7 (Mich. App. July 30, 2019) (finding statute "dispositive" on issue of beneficiary's standing). Based upon the allegations of conversion and embezzlement in the complaint, Plaintiff has statutory standing to sue for the benefit of the trust.

   III.   <u>Statutes of Limitations</u>

The Sixth Circuit has noted that "a motion under Rule 12(b)(6), which considers only the allegations in the complaint, is generally an inappropriate vehicle for dismissing a claim based upon the statute of limitations," unless "the allegations in the complaint affirmatively show that

the claim is time-barred." *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012), *cert. denied*, 568 U.S. 1157 (2013); *see also Gomba Music, Inc. v. Avant*, 62 F. Supp. 3d 632, 636 (E.D. Mich. 2014).

Defendant contends that the statute of limitations has run on all of Plaintiff's claims. In particular, Defendant asserts that the mortgage was recorded in 2013 and the 2015 foreclosure sale was public and advertised. Defendant claims that he made several statements to reporters, which were published, making it clear that he foreclosed on the mortgage and considered himself the owner of the property. Based upon this public information, Defendant argues that Plaintiff should have discovered her claims in 2015.

Plaintiff responds that she did not discover her claims until 2022. She alleges that Defendant voluntarily embraced a fiduciary role with respect to the property, by exercising control over it and the trustee. Defendant allegedly led the trust beneficiaries to believe that he was marketing and developing the property for their benefit, and he assured them that the mortgage would not harm their interests and would not be foreclosed. ECF No. 1 at ¶¶ 13-23. Nonetheless, Defendant initiated foreclosure proceedings in January 2015. In September 2015, Defendant was quoted in *Crain's Detroit Business* as stating that "there's no real debt on the

property" and that he expected to form a partnership with the other trust beneficiaries to develop the property. ECF No. 21-3. Plaintiff contends that Defendant continued to lead the beneficiaries to believe that they still owned the property after the foreclosure sale.

Plaintiff filed her complaint in late 2023. The statutes of limitations applicable to her claims range from three to six years. M.C.L. § 600.5805, § 600.5807, § 600.5813. *See Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 187 (1997) (civil RICO, four years); *Boyle v. GMC*, 468 Mich. 226, 231 (2003) (fraud, six years); *Huhtala v. Travelers Ins. Co.*, 401 Mich. 118, 125 (1977) (breach of contract, promissory estoppel, six years); *Lothian v. Detroit*, 414 Mich. 160, 169 (1982) (unjust enrichment, six years); *Tillman v. Great Lakes Truck Ctr., Inc.*, 277 Mich. App. 47 (2007) (conversion, three years); *Prentis Family Found., Inc. v. Barbara Ann Karmanos Cancer Inst.*, 266 Mich. App. 39, 47 (2005) (breach of fiduciary duty, three years); *James v. Logee*, 150 Mich. App. 35, 37-38 (1986) (tortious interference, three years).

Plaintiff argues that the statutes of limitations should be tolled based upon Defendant's fraudulent concealment of her claims. Under federal pleading standards, a plaintiff must show "(1) wrongful concealment of their actions by the defendants; (2) failure of the plaintiff to discover the operative facts that are the basis of his cause of action within the limitations

period; and (3) plaintiff's due diligence until discovery of the facts." *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 446 (6th Cir. 2012). Michigan law is similar; with respect to her state law claims, M.C.L. § 600.5855 governs fraudulent concealment tolling:

> If a person who is or may be liable for any claim fraudulently conceals the existence of the claim or the identity of any person who is liable for the claim from the knowledge of the person entitled to sue on the claim, the action may be commenced at any time within 2 years after the person who is entitled to bring the action discovers, or should have discovered, the existence of the claim or the identity of the person who is liable for the claim, although the action would otherwise be barred by the period of limitations.

M.C.L. § 600.5855; *see also Doe v. Roman Cath. Archbishop of Archdiocese of Detroit*, 264 Mich. App. 632, 642 (2004). "Fraudulent concealment means employment of artifice, planned to prevent inquiry or escape investigation, and mislead or hinder acquirement of information disclosing a right of action. The acts relied on must be of an affirmative character and fraudulent." *Doe*, 264 Mich. App. at 642 (citations omitted). For this exception to apply, a plaintiff "must plead in the complaint the acts or misrepresentations that comprised the fraudulent concealment" and "prove that the defendant committed affirmative acts or misrepresentations that were designed to prevent subsequent discovery." *Mays v. Snyder*, 323 Mich. App. 1, 39 (2018), *aff'd*, 506 Mich. 157 (2020). In general, "[m]ere

silence is insufficient" to constitute fraudulent concealment. *Sills v. Oakland Gen. Hosp.*, 220 Mich. App. 303, 310 (1996). In addition, a plaintiff must demonstrate due diligence in discovering her claim. "[T]he plaintiff must be held chargeable with knowledge of the facts, which it ought, in the exercise of reasonable diligence, to have discovered." *Gomba Music, Inc. v. Avant*, 62 F. Supp. 3d 632, 647-48 (E.D. Mich. 2014) (quoting *Barry v. Detroit Terminal R.R. Co.,* 307 Mich. 226 (1943)).

An exception to the "affirmative act" rule applies when the parties are in a fiduciary relationship. *Brownell v. Garber*, 199 Mich. App. 519, 527 (1993). Under those circumstances, "there is an affirmative duty to disclose" material facts. *Id.* A fiduciary relationship is one in which "one person is under a duty to act for the benefit of the other on matters within the scope of the relationship." *Calhoun Cnty. v. Blue Cross Blue Shield Michigan*, 297 Mich. App. 1, 20 (2012).

> Fiduciary relationships [usually] arise in one of four situations: (1) when one person places trust in the faithful integrity of another, who as a result gains superiority or influence over the first, (2) when one person assumes control *and* responsibility over another, (3) when one person has a duty to act for or give advice to another on matters falling within the scope of the relationship, or (4) when there is a specific relationship that has traditionally been recognized as involving fiduciary duties, as with a lawyer and a client or a stockbroker and a customer.

*Id.* (citation omitted). "While the question whether a fiduciary duty exists is a question of law for the court to decide, '[t]he existence of a confidential relationship or fiduciary relationship is a question of fact.'" *Spreitzer v. Hutchison*, 2018 WL 1403793, at *4 (Mich. App. Mar. 20, 2018) (citing *Prentis*, 266 Mich. App. at 43; and *Taylor v. Klahm*, 40 Mich. App. 255, 264 (1972)).

"Questions of concealment and diligence" are also "questions of fact." *Best v. Park W. Galleries, Inc.*, 2013 WL 4766678, at *7 (Mich. App. Sept. 5, 2013) (citing *Int'l Union United Auto Workers of Am. v. Wood*, 337 Mich. 8, 13 (1953)). Moreover, whether a fiduciary relationship existed is relevant to the reasonableness of Plaintiff's inquiry into the presence of her claims. *See Heap v. Heap*, 258 Mich. 250, 263 (1932) ("We recognize the general rule that the running of the statute will not be postponed if the defrauded person may discover the fraud from public records. This rule does not apply to a person while a fiduciary relationship exists and nothing occurs to indicate the necessity for investigation."); *see also Carrier*, 673 F.3d at 447 ("[I]n evaluating the due-diligence element, the court should evaluate such acts of active concealment as a factor in determining whether the plaintiff's investigation was reasonable under the circumstances.").

The elements of mail fraud are "(1) a scheme to defraud, and (2) use of the mails in furtherance of the scheme." *United States v. Jamieson*, 427 F.3d 394, 402 (6th Cir. 2005). Wire fraud is essentially the same, except that one must use the wires in furtherance of the fraudulent scheme. *United States v. Daniel*, 329 F.3d 480, 486 n.1 (6th Cir. 2003). "A scheme to defraud includes any plan or course of action by which someone uses false, deceptive, or fraudulent pretenses, representations, or promises to deprive someone else of money." *Jamieson*, 427 F.3d at 402.

Contrary to Defendant's argument, actual reliance on false statements is not an element of a civil RICO claim. *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008); *Brown v. Cassens Transp. Co.*, 546 F.3d 347, 356 (6th Cir. 2008). Plaintiff's claim is not subject to dismissal on this basis.

Defendant also argues that Plaintiff has not adequately pleaded an enterprise that is distinct from Adell himself. "[T]o establish liability under § 1962(c) one must allege and prove the existence of two distinct entities: (1) a "person"; and (2) an "enterprise" that is not simply the same "person" referred to by a different name." *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001). Therefore, "[u]nder RICO, a corporation cannot be both the 'enterprise' and the 'person' conducting or participating in the

affairs of that enterprise." *In re ClassicStar Mare Lease Litig.*, 727 F.3d 473, 490 (6th Cir. 2013).

This principle does not assist Defendant here, as he is not a corporation. Moreover, Defendant's argument ignores paragraph 33 of the complaint, in which Plaintiff alleges that Adell was "the equivalent of the enterprise's chief executive officer, and Lameti was and is the equivalent of the enterprise's chief financial officer; Lameti did and does carry out some of Defendant's directives and delegate some to lawyers and possibly others whose services perpetrate or further the criminal or fraudulent purposes of the enterprise. . . ." ECF No. 1 at ¶ 33. Plaintiff does not allege that the enterprise is synonymous with Defendant, and she sufficiently alleges an enterprise distinct from Defendant at this stage of the proceedings.

V.     Conversion/Embezzlement

Defendant next argues that Plaintiff has failed to state a claim for conversion or embezzlement of trust property, because "real property cannot be converted." *Alisa A. Peskin-Shepherd, PLLC v. Blume*, 509 Mich. 1046, 1046 (2022). "[C]onversion is any distinct act of dominion wrongfully exerted over another's *personal property* in denial of or inconsistent with his rights therein." *Id.* (emphasis added) (citation omitted). However,

"[i]f real property is held in trust and by the terms of the trust a duty is imposed upon the trustee to sell it and hold the proceeds in trust or distribute the proceeds, the interest of the beneficiary is personal property." *Union Guardian Tr. Co. v. Nichols*, 311 Mich. 107, 117 (1945) (quoting Restatement of Trusts § 131). The nature of Plaintiff's claim is that she alleges that Defendant converted her beneficial interest in the trust, not that he converted real property. In accordance with the general rule articulated in *Union Guardian*, Plaintiff has stated a plausible claim for relief.

## ORDER

IT IS HEREBY ORDERED that Defendant's motion to dismiss (ECF No. 18) is DENIED.

Dated: May 21, 2024

> s/George Caram Steeh
> HON. GEORGE CARAM STEEH
> UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on May 21, 2024, by electronic and/or ordinary mail.

s/LaShawn Saulsberry
Deputy Clerk

---