UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOAN TRINGALE,

                  Plaintiff,                  Case No. 2:23-cv-12309

v.                                    Honorable Susan K. DeClercq
                                    United States District Judge

KEVIN R. ADELL,

                  Defendant.

_____/

## ORDER AND OPINION GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 47) AND CLOSING THE CASE

Despite the shady history underlying Defendant's acquisition of property previously belonging to three family trusts, this case simply comes too late. Plaintiff's claim of a fraudulent mortgage note, which led to the foreclosure sale where Defendant bought the disputed property, may have merit. Indeed, there has been litigation over this mortgage since 2014. Nonetheless, the undisputed evidence demonstrates that the applicable statutes of limitations for Plaintiff's claims have expired. Therefore, this court will grant summary judgment for the Defendant and dismiss the case.

# I. BACKGROUND

## A. The Origin of the Novi Property

At the center of this dispute is a commercial property located at 43700 Expo Center Drive in Novi, Michigan (the "Novi Property"). *See* ECF Nos. 1; 47-2 at PageID.1696. This property was equally owned by three trusts: the Robert Adell Children's Trust, the Franklin Adell Children's Trust, and the Marvin Adell Children's Trust. ECF Nos. 47-2 at PageID.1696; 47-14; 50-5. Plaintiff Joan Tringale was the sole beneficiary of the Robert Adell Trust. ECF No. 47-14 at PageID.1984–86. Defendant Kevin Adell and his sisters were beneficiaries of the Franklin Adell Trust. ECF No. 1 at PageID.4–5; *see generally* 50-5 at PageID.2466–77.

In 1961, the three trusts formed a partnership named Adell Brothers' Children's Trust ("ABCT Partnership") to invest in real estate. ECF Nos. 47-2 at PageID.1696; 50-5 at PageID.2490–92. In 1965, the ABCT Partnership purchased the Novi Property for $150,000. ECF No 47-9 at PageID.1839. Beginning in about 1997, Ralph Lameti served as the sole trustee of all three trusts and managed the ABCT Partnership's affairs, including its stewardship of the Novi Property. *Id.*

## B. The Mortgage

The Novi Property earned rental income until the Novi Expo Center ended its lease in early 2006. *See* ECF No. 47-2, PageID.1698; *see also* ECF Nos. 50-7 at

PageID.2628; 50-9; 50-11. Kevin Adell (Adell) then saw a chance to develop it, and he invested over a million dollars to launch a flea-market venture he called the Novi Trade Center. ECF Nos. 47-2 at PageID.1699–1700; 50-7 at PageID.2628. In August 2013, trustee Lameti signed a mortgage note on the Novi Property in Adell's favor, securing the amount Adell had invested in the Novi Trade Center.[1] ECF Nos. 4; 47-2 at PageID.1700. The Oakland County Register of Deeds recorded the mortgage on September 11, 2013. ECF No. 47-18 at PageID.2079–84. The next month, Adell signed a discharge of that mortgage, ECF No. 47-21 at PageID.2158, and told beneficiary Michael Adell about it, ECF No. 50-8 at PageID.2707–10. But Michael Adell never recorded the discharge. ECF No. 50-7 at PageID.2610.

### C. The Foreclosure Sale

By the end of 2014, Adell moved to foreclose on the Novi Property. *See* ECF No. 47-4. In December 2014 and January 2015, he published the required foreclosure notices in the Detroit Legal News and the Oakland County Legal News and posted notice on the property itself. *Id.* The foreclosure sale took place on January 27, 2015, at the Oakland County Courthouse before a large crowd. *Id.* at

---

[1] Whether that debt was properly charged to the Partnership and its trusts lies at the heart of the parties' dispute on the merits. Tringale contends that the trusts were never meant to bear those development costs. ECF Nos. 50 at PageID.2365–67; 50-9 at PageID.2770. Adell disagrees and argues that all the beneficiaries agreed he would be reimbursed. ECF No. 47-2 at PageID.1699–1700. Because the Court resolves this case on statute-of-limitations grounds, it does not reach this question.

PageID.1747; *see also* ECF No. 47-5 at PageID.1771. Adell's corporation, STN.com, Inc., bought the property at that sale. ECF No. 47-2 at PageID.1701. The Sheriff's deed was recorded the next month. ECF No. 47-4 at PageID.1747–53. With that, Adell's corporation became the sole owner of the Novi Property, extinguishing the beneficial interests of all three trusts.

### D. The Planning Commission Hearing

On July 11, 2018, the City of Novi Planning Commission held a public hearing on a proposed zoning amendment for the Novi Property. ECF No. 47-9 at PageID.1827–28. Tringale attended, as did Adell and Lameti. *Id.* at PageID.1834; ECF Nos. 47-3 at PageID.1733; 47-10 at PageID.1912 (depicting Tringale in the second row of the audience). At the hearing, Adell introduced himself, stating: "I am the owner of the property on the corner of Novi Road and I-96," and continued to present his plan to develop the property. ECF No. 47-9 at PageID.1839. After attending the City of Novi Planning Commission hearing in July 2018, Tringale and Adell ceased communication. ECF No. 47-3 at PageID.1714. By the end of 2018, Tringale was no longer communicating with Lameti, either. *Id.* at PageID.1720.

- 4 -

### E. Tringale's Bankruptcy and the Google Search

Approximately four months later, on November 5, 2018, Tringale filed a voluntary Chapter 7 bankruptcy petition.[2] ECF No. 47-16. In her financial summary, she listed assets valued at just over $7,300 in total. *Id.* at PageID.2012. She did not disclose the beneficial interest in the Novi Property she now claims to have held. Indeed, when asked to identify any trusts, equitable or future interests in property, or rights she could exercise for her own benefit, she answered "no." *Id.* at PageID.2016 (answering Question 25). She again answered "no" when asked whether any interest in property was owed to her from a deceased person. *Id.* at PageID.2017 (answering Question 32).

But in August 2022, nearly seven years after Adell acquired the Novi Property, Tringale says she learned through a Google search that her cousins—the beneficiaries of the other Adell trusts—were suing Adell. ECF No. 47-3 at PageID.1711–12. It was then, she testified, that she first learned Adell had fraudulently acquired the Novi Property. *Id.*

---

[2] Chapter 7 is a liquidation bankruptcy: the debtor surrenders all non-exempt property to a trustee, who sells it and distributes the proceeds to creditors. *See Chapter 7 Bankruptcy Basics*, U.S. COURTS, https://perma.cc/VL3P-GUZ9 (last visited May 18, 2026). In exchange, the debtor receives a discharge of most debts. *See id.* In addition to the petition, the debtor must file, under penalty of perjury, schedules of assets and liabilities, a schedule of current income and expenditures, a statement of financial affairs, and a schedule of executory contracts and unexpired leases. *See id.*; *see also* FED. R. BANKR. P. 1007(b).

So on August 26, 2022, she filed a motion to reopen her Chapter 7 bankruptcy case to disclose her trust asset and to inform about potential recovery from her cousins' lawsuit. ECF No. 47-17 at PageID.2057–58. In that motion, her attorney represented that prior to filing for bankruptcy Tringale had been "informed and believed" that her beneficial interest in the Robert Adell Children's Trust was "worthless," and acknowledged that her causes of action "existed when [she] filed her case in 2018 but were unknown to her at that time." *Id.* at PageID.2057.

### F. Procedural History

A year later, on September 11, 2023, Tringale filed this lawsuit against Adell. She alleges that he wrongfully extinguished her trust rights to the Novi Property and asserts the following claims:

| Count No. | Legal Theory |
|---|---|
| I | Civil RICO |
| II | Fraud / Fraudulent Misrepresentation & Concealment |
| III | Breach of Contract |
| IV | Promissory Estoppel |
| V | Unjust Enrichment |
| VI | Declaratory Judgment |
| VII | Statutory Conversion (MCL 600.2919a) |
| VIII | Conversion/Embezzlement of Trust Property (MCL 700.7813(4)) |
| IX | Aiding and Abetting Breach of Fiduciary Duty |
| X | Vicarious Liability (Respondeat Superior/Agency) |
| XI | Tortious Interference with a Business Relationship/Expectancy |

| Count No. | Legal Theory |
|---|---|
| XII | Constructive Trust / Breach of Fiduciary Duty (as Constructive Trustee) |

ECF Nos. 1; 47-25 at PageID.2332.

Adell moved to dismiss, ECF No. 18, but Judge George Caram Steeh denied his motion to dismiss, finding that Tringale had sufficiently pleaded her claims and that there were outstanding questions of fact best resolved after discovery—namely, whether a fiduciary relationship existed between the Parties, and when Tringale should have discovered her rights to bring her claims. ECF No. 23 at PageID.575, 578. This case was then reassigned to the undersigned on July 15, 2024. ECF No. 29.

After the close of fact discovery, Adell moved for summary judgment, arguing that Tringale's claims are time barred and are legally deficient. ECF No. 47. Tringale opposes Adell's motion, contending that her claims are either timely or saved by the doctrines of fraudulent concealment or equitable estoppel. ECF No. 50. Adell replies that Tringale's arguments rest on attorney hearsay and do not apply as a matter of law. ECF No. 52. On May 12, 2026, this Court held a hearing on the motion. *See* ECF No. 53.

## II. LEGAL STANDARD

To prevail on summary judgment, the movant must identify record evidence showing that there is no genuine dispute of material fact and it is entitled to judgment

- 7 -

as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); FED. R. CIV. P. 56(a). If the movant makes that showing, then the burden shifts to the nonmovant to identify specific facts that create "a genuine issue for trial," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (citation omitted), which requires more than a mere "scintilla of evidence," *id.* at 251, and more than "metaphysical doubt," *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). A genuine issue of material fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In making that determination, all reasonable inferences must be drawn in the nonmovant's favor. *See id.* at 251–52.

### III. DISCUSSION

Timing decides this case. The central question is whether Tringale's claims—filed September 11, 2023—are timely under any of the applicable statutes of limitations. Because they are not, this Court will dismiss them.

Summary judgment is proper when no genuine dispute of material fact exists about when a claim accrued or about whether the limitations period has run. *See Campbell v. Grand Trunk W. R.R. Co.*, 238 F.3d 772, 775 (6th Cir. 2001). The burden starts with the defendant "to show that the statute of limitations has run" because it is an affirmative defense. *Id.* Once the defendant meets that burden, it "shifts to the plaintiff to establish an exception to the statute of limitations." *Id.* If the plaintiff

identifies none, the movant is entitled to judgment as a matter of law. *See Reguli v. Russ*, 109 F.4th 874, 876 (6th Cir. 2024) (per curiam) (affirming dismissal of time-barred claims).

Each of Tringale's claims will be addressed separately because the accrual rules and the limitation periods differ between the federal and state law claims. But the central premise for all of her claims is the loss of "her right to own an undivided one-third interest in the Novi Property and her beneficial interest in other trust property" on January 27, 2015, when Adell, through STN.com, Inc., acquired the Novi Property at the foreclosure sale. *See* ECF No. 1 at PageID.32; ECF Nos. 47-2 at PageID.1701; 47-4 at PageID.1747; 47-5 at PageID.1771. That loss is Tringale's injury, so for all of Tringale's claims, it is clear her injury occurred on January 27, 2015.

## A. Racketeer Influenced and Corrupt Organizations Act ("RICO") (18 U.S.C. § 1961 et seq.)

Civil RICO claims carry a four-year statute of limitations. *See Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 156 (1987). The clock begins to run "when they 'knew or should have known of [the] injury.'" *Baltrusaitis v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am.*, 86 F.4th 1168, 1177 (6th Cir. 2023) (quoting *Rotella v. Wood*, 528 U.S. 549, 554–55 (2000)). Thus, "discovery of the injury, not discovery of the other elements of a claim, is what starts

the clock." *Rotella*, 528 U.S. at 555 (holding the pattern-discovery rule "unsound" and applying instead the injury-discovery rule).

Adell argues that Tringale should have known of her injury before September 2019 because the 2015 foreclosure sale was properly noticed, advertised, and publicly held, and because Tringale attended the 2018 Planning Commission meeting. ECF No. 47 at PageID.1678–82. Tringale responds that even with all these facts before her, she could not have discovered the fraud and so could not have known she had a RICO claim. ECF No. 50 at PageID.2363

Because no evidence shows that Tringale personally knew of the 2015 foreclosure sale, the question is when she *should have* known of it. To decide what a plaintiff should have known, courts ask "what facts a reasonably diligent plaintiff would have discovered." *Gabelli v. Sec. & Exch. Comm'n*, 568 U.S. 442, 452 (2013). This is an objective inquiry into what events "should have alerted the typical lay person to protect his or her rights," *Johnson v. Memphis Light Gas & Water Div.*, 777 F.3d 838, 843 (6th Cir. 2015).

In this case, the record reveals two moments when Tringale *should have* discovered her injury: the City of Novi Planning Commission meeting in July 2018, and her Chapter 7 bankruptcy filing in November 2018.

*a. City of Novi Planning Commission Meeting*

Tringale attended the Planning Commission meeting alongside Adell and Lameti. ECF No. 47-9 at PageID.1834 (meeting minutes); ECF No. 47-3 at PageID.1733. The meeting had been requested by Orville Properties, LLC, a company managed by Adell—not the ABCT Partnership or any of the trusts. ECF No. 47-9 at PageID.1828; ECF No. 47-12 at PageID.1977. At that meeting, Adell's engineer, Mr. LeClair, introduced Adell's plan to develop the property, including companies like "iFly, Planet Fitness, Fairfield Inn, Drury, and Carvana." *Id.* at PageID.1835. Adell then presented himself as the property's owner. *Id.* at PageID.1839. He said his family would not develop the property but described that family as only his wife and his twelve-year-old daughter. *Id.* He added that his father bought the property in 1965, without mentioning the trusts that once owned it. *Id.* at PageID.1840.

Adell's statements to the Planning Commission contradicted the ownership structure Tringale believed to be true at the time. Recall, according to Tringale, three trusts—the Robert, Franklin, and Marvin Adell Children's Trusts—had owned the Novi Property in equal shares. ECF Nos. 47-2 at PageID.1696; 47-14 at PageID.1984–86; 50-5. Those trusts had formed the ABCT Partnership to manage the real estate, including the Novi Property, on behalf of the trusts' beneficiaries— one of which was Tringale. ECF Nos. 47-2 at PageID.1696; 47-9 at PageID.1839;

50-5 at PageID.2490–92. At the meeting, however, Adell claimed the property as his own, traced its purchase to his father rather than to the partnership, and described his "family" as only his wife and daughter—naming neither the trusts nor the ABCT Partnership. ECF No. 47-9 at PageID.1839–40. A beneficiary who believed that her trust held an equal share to the property should have been alarmed by Adell's statements. *See Johnson*, 777 F.3d at 843. So alerted, a reasonably diligent plaintiff would have discovered that the Novi Property had been sold, because the foreclosure sale was publicly recorded.

Tringale's own situation reinforces this conclusion. She was months from filing for bankruptcy, but she believed her beneficial interest in the Novi property was worth millions, so she attends a meeting where she hears Adell publicly claim sole ownership in the property—without any mention of a family trust or management partnership. Yet she waited four years after the meeting to run the Google search that led her to her cousin's lawsuit over the same property. On these undisputed facts, any lay person would have been alerted to the possibility that she no longer held a beneficial interest in the Novi Property, and a reasonably diligent plaintiff would have discovered the injury through available public records.

### b. Tringale's 2018 Bankruptcy Filing

Moreover, Tringale also should have discovered her injury no later than November 5, 2018, when she filed for Chapter 7 bankruptcy relief.

While a bankruptcy debtor gets protection from creditors and the possibility of discharge, in exchange she must disclose all her assets. *See* 11 U.S.C. §§ 521(a)(1)(B); *see also* 5 Collier on Bankruptcy ¶541.07 (R. Levin & H. Sommer eds., 16th ed. 2026) (Collier) ("[T]he estate includes 'all legal or equitable interests of the debtor in property.'"). That duty exists to ensure that the trustee may "maximiz[e] the recovery of assets for the benefit of the bankruptcy estate and its creditors." *In re Lennys Copy Ctr. & More LLC*, 515 B.R. 562, 564 (Bankr. E.D. Mich. 2014). "Full disclosure is the cornerstone and capstone of any bankruptcy case and is necessary for the successful administration of a bankruptcy estate." *In re Opra*, 365 B.R. 728, 743 (Bankr. E.D. Mich. 2007) (internal quotation marks and citations omitted). The debtor and her attorney each bear "a fiduciary obligation to act in the best interest of the entire estate, including creditors." *In re Lennys Copy Ctr.*, 515 B.R. at 564–65 (internal quotation marks and citation omitted).

Thus, it is sacrosanct that bankruptcy debtors must disclose what they own. The schedules they file demand a full accounting of their property, *see* §521(a)(1)(B); FED. RULE BKRTCY. PROC. 1007(b)(1), including all "[t]rusts, equitable or future interests in property (other than anything listed in line 1), and rights or powers exercisable for your benefit." Official Form 106A/B, Schedule A/B: Property, Pt. 4, Question 25. Then debtors must swear, "[u]nder penalty of perjury,"

- 13 -

that what they have reported is "true and correct." Official Form 106Dec, Declaration About an Individual Debtor's Schedules.

Here, Tringale disclosed no trust interest. ECF No. 47-16 at PageID.2016–17 (answering Question 25). Consider what was at stake. Tringale was filing for bankruptcy while allegedly sitting on a beneficial interest worth millions, on its way to becoming even more valuable after rezoning approval. The second biggest creditor was a trust that had been set up for the benefit of Tringale's own children. *Id.* at PageID.2024. If there was ever a moment that called for a person to investigate the status of a potentially enormous asset, this was it. Especially in this case, as the RICO statute "encourage[s] prompt litigation to combat racketeering." *Rotella*, 528 U.S. at 557 n.3. Considering these circumstances, had Tringale fulfilled her duties as a Chapter 7 debtor, she would have discovered no later than November 5, 2018, that she no longer held a beneficial interest in the Novi property.

Tringale's position leaves any reasonable jury with only two possibilities. Either Tringale told the truth in her bankruptcy filings—in which case she knew she had no beneficial interest to disclose—or she failed her statutory duties as a debtor, in which case, those duties, properly performed, would have led her to discover that her interest was gone. Either way, the limitations period has run. She cannot have it both ways.

*c. There is no Exception to the Statute of Limitations Defense*

Once a movant establishes a *prima facie* absence of a genuine issue about a statute of limitations defense, the burden shifts to the non-moving party. *See* FED. R. CIV. P. 56(c); *Campbell*, 238 F.3d at 775. But Tringale's response fails on both the law and the facts. *See* ECF No. 50 at PageID.2372–73.

First, she cites a lone unpublished Sixth Circuit opinion that undermines rather than supports her position because it applies the injury-discovery rule—the very standard she argues against—holding that RICO's four-year period begins when a party knew, or with reasonable diligence should have known, of the injury. That case closes the door she is trying to open. *See Sims v. Ohio Cas. Ins. Co.*, 151 F. App'x 433, 436 (6th Cir. 2005) (unpublished) (affirming dismissal on statute of limitations grounds by holding that "the plaintiffs need not be aware of every minute fact underlying their RICO claims.").

Second, her factual argument fares no better. The relevant question is narrow: when should Tringale have discovered her injury? The question is not when should she have known *all the elements* of a RICO claim existed. It is just when she should have known of her injury. Without a single citation to the record, she sidesteps that question and instead simply asserts that she neither discovered nor should have discovered her claim before August 2022. She offers three reasons: her own testimony, the complexity of the alleged fraud, and the fact that no other trust beneficiary suspected wrongdoing before fall 2020. She explains none of them. She

- 15 -

does not identify which portions of her testimony bear on the issue. She does not explain how the fraud's complexity prevented discovery, or for how long. And she does not address the obvious problem her third point creates: if other beneficiaries discovered the injury in 2020, that fact weighs against her 2022 discovery date, not in favor of it. *See generally* ECF No. 50 at PageID.2372–73.

In sum, there is no genuine dispute of material fact that Tringale knew or should have known of her injury no later than November 5, 2018. Because she did not file a RICO claim until more than four years later, Adell is entitled to judgment as a matter of law. Tringale's RICO claim will be dismissed as time barred.

## B. Statute of Limitations – Fraud (Count II)

Tringale's common law fraud claim fares no better. Adell argues that Tringale's fraud claim is time barred as a matter of law because it accrued in 2015 and no discovery rule applies. ECF No. 47 at PageID.1682. Tringale, on the contrary, argues that her fraud claim accrued in 2022 when she conducted the Google search that led to learning about her cousins' lawsuit against Adell. ECF No. 50 at PageID.2373. But there is no genuine dispute of material fact that Tringale's fraud claim accrued on January 27, 2015, and that this claim was filed after the limitations period expired. As explained below, the claim accrued at the 2015 foreclosure sale, and no exception—neither the discovery rule, fraudulent concealment, nor equitable estoppel—revives it.

*a. Accrual and the Limitations Bar*

Under Michigan law, a fraud claim accrues "at the time the wrong upon which the claim is based was done regardless of the time when damage results." MICH. COMP. LAWS § 600.5827. Put simply, the clock starts when the plaintiff is harmed, not when she discovers it. *See Sunrise Resort Ass'n v. Cheboygan Cnty. Rd. Comm'n*, 999 N.W.2d 423, 429 (Mich. 2023); *see also Boyle v. Gen. Motor Corp.*, 661 N.W.2d 557, 560 (Mich. 2003) (holding that the discovery rule does not apply in fraud actions). From that accrual date, a plaintiff has six years to file. MICH. COMP. LAWS § 600.5813.

Here, as explained before, the wrong upon which Tringale brings her fraud claim is the loss of her beneficial interest of the Novi Property. That wrong occurred on January 27, 2015, when Adell acquired the Novi Property at the foreclosure sale. *See* ECF Nos. 47-5 at PageID.1701, 1771; PageID.2369; 47-18 at PageID.2092–95. Tringale's discovery-rule argument is erroneous. *See Boyle*, 661 N.W.2d at 560. Accordingly, because she filed suit two years after the six-year limitations period expired, Adell is entitled to judgment as a matter of law. Tringale's fraud claim will be dismissed as time barred.

## C. Remaining State Law Claims

- 17 -

Tringale's state law claims are premised on the loss of "her right to own an undivided one-third interest in the Novi Property and her beneficial interest in other trust property" on January 27, 2015, when Adell acquired the Novi Property at the foreclosure sale. *See* ECF No. 1 at PageID.32; ECF Nos. 47-2 at PageID.1701; 47-4 at PageID.1747; 47-5 at PageID.1771. That loss is Tringale's injury, and it fixes the accrual date for all of her claims. Whatever the label — breach of contract, promissory estoppel, unjust enrichment, conversion, or tortious interference — each claim accrued on that single day, because the foreclosure sale was at once the unperformed promise, the wrongful assertion of dominion over Tringale's interest, and the completion of every element of every claim. The only variable is the length of the limitations period, and under Michigan law none is long enough to save these claims.

The longest applicable period is six years, which governs Tringale's breach of contract, promissory estoppel, and unjust enrichment claims (Counts III, IV, and V). MICH. COMP. LAWS §§ 600.5807(9), 600.5813; *see Miller-Davis Co. v. Ahrens Constr., Inc.*, 848 N.W.2d 95, 105 (Mich. 2014) (contract claim accrues when the promisor fails to perform); *Huhtala v. Travelers Ins. Co.*, 257 N.W.2d 640, 643 (Mich. 1977) (six-year period governs promissory estoppel grounded in contract principles); *Bowman v. Dentsply Sirona, Inc.*, No. 1:22-cv-191, 2023 U.S. Dist. LEXIS 67260, at *8–9 (W.D. Mich. Mar. 23, 2023) (unjust enrichment, as a claim

dependent on contract principles, carries the six-year period). Measured from January 27, 2015, those claims expired by January 27, 2021.

Tringale's remaining claims — conversion and tortious interference (Counts VII, VIII, and XI) — each carry a three-year limitations period. MICH. COMP. LAWS § 600.5805(2); *see Tillman v. Great Lakes Truck Ctr., Inc.*, 742 N.W.2d 622, 623–24 (Mich. Ct. App. 2007) (conversion is an action for injury to property, accruing when dominion is wrongfully asserted); *James v. Logee*, 388 N.W.2d 294, 295–96 (Mich. Ct. App. 1986) (tortious interference accrues once every element is present and can be pleaded). Measured from the same date, those claims expired by January 27, 2018.

Tringale did not file suit until 2023 — two years after even the six-year claims lapsed, and five years after the three-year claims did. Every state law claim, therefore, is time barred and must be dismissed.[3]

## D. Equitable Tolling

---

[3]Count VI (declaratory judgment) fails with the substantive claims. Declaratory judgment is a remedy that must attach to a viable underlying claim, not a freestanding cause of action. Because Tringale's substantive claims are time barred, her request for declaratory relief will be dismissed as well. *See Int'l Ass'n of Machinists & Aerospace Workers v. Tenn. Valley Auth.*, 108 F.3d 658, 668 (6th Cir. 1997).

*a. Fraudulent Concealment*

Tringale argues that her state law claims are preserved by fraudulent concealment. ECF No. 50 at PageID.2373–77. She advances two theories, but both fail.[4]

In Michigan, "[f]raudulent concealment means employment of artifice, planned to prevent inquiry or escape investigation, and mislead or hinder acquirement of information disclosing a right of action." *Doe v. Roman Catholic Archbishop of Archdiocese of Detroit*, 692 N.W.2d 398, 405 (Mich. Ct. App. 2004) (quotation marks and citation omitted). Where fraudulent concealment applies, the plaintiff gets a two-year window to file from the date she discovered or reasonably should have discovered the claim, even if the limitations period has already expired. Mich. Comp. Laws § 600.5855. "The 'knew or should have known' language indicates that when a claim accrues is subject to an objective standard." *Prentis Fam. Found. v. Barbara Ann Karmanos Cancer Inst.*, 698 N.W.2d 900, 909 (Mich. Ct. App. 2005). "Under this test, a plaintiff is deemed to be aware of a possible cause of

---

[4] The concealment argument also fails for an independent reason: Tringale never cites the record to support it. It is not the court's task to comb the record to build a party's claims. The litigant must point the court to the evidence supporting its arguments; conclusory assertions cannot carry that burden. *See Magnum Towing & Recovery v. City of Toledo*, 287 F. App'x 442, 449 (6th Cir. 2008). That omission alone would justify rejecting the argument.

action when [s]he becomes aware of an injury and its possible cause." *Shawl v. Dhital*, 529 N.W.2d 661, 663 (Mich. Ct. App. 1995). "[A] plaintiff relying on fraudulent concealment must exercise reasonable diligence to discover a cause of action. If the plaintiff was negligent in failing to timely discover the claim, fraudulent concealment will not apply." *Doe*, 692 N.W.2d 410–11 (Hood, J., concurring in part and dissenting in part).

First, Tringale contends that Adell and Lameti took affirmative steps to conceal the fraud by telling her and Michael Adell after the foreclosure that they were protecting the Novi Property for all trust beneficiaries. ECF No. 50 at PageID.2374. "Generally, for fraudulent concealment to postpone the running of a limitations period, the fraud must be manifested by an affirmative act or misrepresentation," conducted by a person who is or may be liable for a claim. *Prentis*, 698 N.W.2d at 909. The record does not support such finding: Tringale admitted that communication with Adell stopped after the July 2018 Planning Commission meeting, the very moment when the facts before her should have prompted her to investigate whether her beneficial interest was gone. ECF No. 47-3 at PageID.1714, 1720. That admission forecloses her concealment argument because she has not identified specific instances where Adell affirmatively failed to disclose the injury from her. *See generally* ECF No. 50. The conduct she points to—Adell's disclosure to Michael Adell about plans to execute a mortgage as leverage in the

- 21 -

attorney's fees dispute, and the copy of the mortgage discharge sent to Michael—reflects affirmative action directed at Michael, not Tringale, and occurred between 2013 and 2015, not after 2018.

Accordingly, because Adell has made a *prima facie* showing that Tringale's fraud claim is time barred as a matter of law, the burden therefore shifts to Tringale to come forward with specific facts showing that there is a genuine issue for trial. *See Celotex*, 477 U.S. at 322–23. But Tringale has not identified any evidence in the record to support her fraudulent concealment argument. *See Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (stating that there is no genuine dispute of fact to overcome a summary judgment motion when "the record taken as a whole could not lead a rational trier of fact to find" in the nonmoving party's favor).

Second, Tringale argues that because Adell owed her a fiduciary duty, his silence constitutes fraudulent concealment. ECF No. 50 at PageID.2374. "[A] fiduciary relationship arises from the reposing of faith, confidence, and trust and the reliance of one upon the judgment and advice of another." *Khalil v. Khalil (In re Monier Living Tr.)*, 936 N.W.2d 694, 703 (Mich. Ct. App. 2019) (quoting *Vicencio v Jaime Ramirez, MD, PC*, 536 N.W.2d 280 (Mich. Ct. App. 1995)). "However, the placement of trust, confidence, and reliance must be reasonable, and placement is unreasonable if the interests of the client and nonclient are adverse or even

potentially adverse." *Prentis*, 698 N.W.2d at 906 (citing *Beaty v Hertzberg & Golden*, 571 N.W.2d 716 (Mich. 1997))

Here, at Tringale's deposition, she admitted that she did not understand Adell to be her trustee:

> **Q:** Did you at any point understand that – understand Kevin to be the trustee of that trust?
>
> **A:** Not the trustee. But he became like our family's spokesman.
>
> * * *
>
> **Q:** He wasn't a trustee?
>
> **A:** No.

ECF No. 47-3 at PageID.1718. Moreover, Adell has been Tringale's creditor since 2007, as shown by her bankruptcy filings. ECF No. 47-16 at PageID.2026. This creditor/debtor relationship means that Adell's interests are adverse to Tringale's, and thus antithetical to a fiduciary relationship. *See Tocco v. Richman Greer Prof'l Ass'n*, 553 F. App'x 473, 475 (6th Cir. 2013) (observing that breach of fiduciary duty is not actionable against someone whose interests are adverse to the other's because "reliance on one with interests adverse to one's own is generally unreasonable"). Thus, Tringale's alternative argument also does not establish fraudulent concealment because the record does not show that she and Adell had a fiduciary relationship at

the time of the injury.[5] Therefore, her fraud claim is time barred and will be dismissed.[6]

### b. Equitable Estoppel

Tringale also invokes equitable estoppel, arguing without elaboration that Adell's "perennial deceit of Plaintiff estops his statute of limitations defenses." ECF No. 50 at PageID.2379. Adell responds that Tringale has not identified any statement he made to her, let alone a false or misleading one. ECF No. 52 at PageID.3081.

Equitable estoppel prevents a defendant from raising the statute of limitations when his own conduct induced the plaintiff to forgo timely suit. *Lothian v. Detroit*,

---

[5] Counts X and XII (breach of fiduciary duty) fail at the threshold because Tringale has not established the existence of a fiduciary relationship—an essential element of the claim. *See Highfield Beach at Lake Michigan v. Sanderson*, 954 N.W.2d 231, 247 (Mich. Ct. App. 2020) ("To establish a claim for breach of fiduciary duty, a plaintiff must prove (1) the existence of a fiduciary duty, (2) a breach of that duty, and (3) damages caused by the breach of duty."). Even if a fiduciary relationship were established, the claims are independently time barred. *See* Mich. Comp. Laws § 600.5805(2); *Grand Traverse Band of Ottawa & Chippewa Indians v. Blue Cross & Blue Shield of Mich.*, 391 F. Supp. 3d 706, 717 (E.D. Mich. 2019) (holding breach of fiduciary duty claims subject to a three-year limitations period). Thus, Counts X and XII will be dismissed.

[6] Even if Tringale were able to establish a fiduciary relationship with Adell, she must still demonstrate the "employment of artifice, planned to prevent inquiry or escape investigation, and mislead or hinder acquirement of information disclosing a right of action." *See Dunmore v Babaoff*, 386 N.W.2d 154, 156 (Mich. Ct. App. 1985) (internal quotation marks and citation omitted). Tringale has not identified a specific act or omission of Adell's that would amount to fraudulent concealment given that all communication between them ceased in 2018. ECF No. 47-3 at PageID.1714, 1720.

- 24 -

324 N.W.2d 9, 17–18 (Mich. 1982). The plaintiff must show a false representation or concealment of material fact, an expectation of reliance, and the defendant's knowledge of the true facts. *Id.* Michigan courts are reluctant to apply the doctrine absent conduct clearly designed to discourage a timely filing. *Id.*

Tringale identifies no such conduct. The record shows not that Adell induced her delay, but that she failed to investigate despite numerous red flags, including the Novi Property's foreclosure being publicly recorded in the Oakland County Register of Deeds, her attendance at the Planning Commission meeting where Adell claimed sole ownership, her bankruptcy filing without disclosing any interest in trust property, and her knowledge that communication with Kevin and Lameti had completely ceased. *See* ECF No. 47-3 at PageID.1714, 1720. Because Tringale shows no false representation, no reliance, and no conduct designed to discourage her filing, equitable estoppel does not save her fraud claim, which remains time barred.

### IV. CONCLUSION

In conclusion, Defendant's Motion for Summary Judgment, ECF No. 47, will be **GRANTED**, and the above-captioned case will be **DISMISSED**.

**This is a final order that closes the above-captioned case.**

/s/ *Susan K. DeClercq*
SUSAN K. DeCLERCQ
United States District Judge

Dated: 7/14/2026

- 25 -